## APPLEBAUM v. WULFF et.

Common Pleas Court, Cuyahoga County.

No. 612303.   Decided July 25, 1950.

Robert M. Skall, George B. Harris, Russell N. Chase, Cleveland, for appellant.

Lee C. Howley, Director of Law, Chas. W. White, Asst. Director of Law, Cleveland, for defendants-appellees.

**OPINION**

By BLYTHIN, J.

In this memorandum the plaintiff will be referred to as teacher. The defendants will be referred to as the board, they being the duly elected, qualified and acting members of the Board of Education of the Cleveland City School District.

Teacher is the holder of a teacher's life certificate and for about twenty-seven years prior to June 21, 1949 had been a teacher in the Cleveland Public Schools. Her contract under the Teachers' Tenure Act is dated July 17, 1942. On June 21, 1949 teacher was notified that the board intended to consider the termination of her teaching contract on the ground of gross inefficiency and that unless within ten days, she demanded an opportunity to appear before the board final action would be taken. Teacher promptly moved to dismiss the entire matter on the ground that the notice given did not comply with the requirements of law in that it was too indefinite, and she further demanded a public hearing before the board. On July 5, 1949 the board by its Clerk-Treasurer communicated to teacher the grounds of the board's intention to terminate the contract. Teacher still maintained that the board had not complied with the requirements of law, claimed the board to be without jurisdiction to hear the matter, all of which claims were overruled and teacher notified that a public hearing was to be had. The public hearing commenced on October 13, 1949 and further sessions were held on various dates, the last being on February 21, 1950. Five of the seven members of the board sat at the hearing, and at the close of the final session the board retired to deliberate and upon reconvening in public session the chairman of the board declared that the board had voted to sustain the recommendation of the superintendent in terminating teacher's contract. Under favor of the provisions of §4842-12 GC, teacher filed her petition in this cause setting forth the procedural steps taken to terminate her contract, the conduct of a public hearing, a recital of the board's decision and containing a denial of all charges made against her and alleging forty-two claimed errors in the proceedings of the board and praying that the board be required to

rescind its action in terminating teacher's contract and be required to reinstate her and to permit her to teach in the public schools of the city; that she be ordered paid her salary for the period of suspension and for such other and further relief to which she be found entitled.

A transcript of the proceedings of the board having been duly filed in this cause, and neither party presenting any further testimony, the matter was presented to the court upon the transcript, the arguments of counsel for teacher and of counsel for the board.

In her forty-second or last specification of error, teacher claims the statute under which her contract was terminated, and under which she seeks relief here, §4842-12 GC, is unconstitutional and void. Teacher herself faces two very serious difficulties with such a claim. First: She is maintaining this proceeding under favor of the statute and can hardly be heard on the one hand to claim its benefits and on the other to assert its unconstitutionality; and Second: If the statute is unconstitutional, teacher would be without a remedy at all for the reason that prior to the enactment of the statute the board had a right to "hire and fire" at will. This court has neither heard nor found any authority or ground for believing the statute unconstitutional. The courts have, on a number of occasions, adjudicated rights under the statute since its enactment without any serious or logical claim of unconstitutionality being considered or even urged.

A question which, in several cases, has presented much more difficulty than that of the claim of unconstitutionality of the statute is that of the nature of the proceeding authorized in the Common Pleas Court, as in this case. Upon oral argument the court inquired of counsel if they deemed it the duty of the court to weigh the evidence presented to the board and counsel for teacher replied in the affirmative, indicating that he deemed the hearing in this court to be more than an error proceeding. This being a special statutory proceeding of rather recent origin it becomes important to appreciate its nature so as to proceed on the basis of that appreciation.

Sec. 4842-12 GC, in its pertinent part, is as follows:

"Any teacher affected by an order of termination of contract shall have the right of appeal to the court of common pleas of the county in which the school is located within thirty days after receipt of notice of the entry of such order. Such appeal shall be an original action in said common pleas court and shall be commenced by the filing of a petition against

such board of education, in which petition the facts shall be alleged upon which the teacher relies for a reversal or modification of such order of termination of contract. Upon service or waiver of summons in said appeal, such board of education shall forthwith transmit to the clerk of said common pleas court for filing a transcript of the original papers theretofore filed with said board and a certified transcript of all evidence adduced at the hearing or hearings before such board, whereupon the cause shall be at issue without further pleading and shall be advanced and heard without delay. The common pleas court shall examine the transcript and record of the hearing before the board of education and shall hold such additional hearings as it may deem advisable, at which it may consider other evidence in addition to such transcript and record.

"Upon final hearing, the common pleas court shall grant or deny the relief prayed for in the petition as may be proper under the provisions of law in accordance with the evidence adduced in the hearing. Such an action shall be deemed to be a special proceeding within the purview of §12223-2 GC and either the teacher or the board of education may appeal therefrom."

To say that the quoted paragraph is loosely and clumsily drawn is the acme of understatement, but the Supreme Court of Ohio has finally spoken upon the scope of the permitted inquiry.

**Powell v. Young et al etc. 148 Oh St 342, 35 O. O. 322, Syllabus 1.**

"The right granted by §4842-12 (former §7690-6), GC, to a teacher, affected by an order of a board of education terminating her contract, to appeal from such order to the Court of Common Pleas is not a right to a trial de novo, but is a right to a review of such order as provided in such section."

After a discussion of the nature of the appeal the court, by Stewart, J, says:

"It seems to us that the General Assembly intended the appeal provision in §7690-6 GC, to be confined to a judicial review of the proceedings of the board of education and to give the court discretion to hold further hearings to be certain that the proceedings before the board were legally

regular and not arbitrary, oppressive, unreasonable or fraudulent; and that it was not the intention of the General Assembly to provide a trial de novo."

The communications of the board's complaint or charge against teacher, in their pertinent parts, are as follows:
Letter of June 21, 1949:

"The ground for such action is as follows:
"Gross inefficiency as attested by principals and supervisors."

Letter of July 5, 1949:

"In elaboration of the ground for termination of your contract, as conveyed by my notice dated June 21, 1949, you are hereby further notified that during your assignments at Moses Cleaveland, Empire and Patrick Henry Schools you were ineffective and uninspiring in the classrooms, and you made little or no contribution to school activities; pupils have not progressed in your classes in accordance with their abilities; you do not maintain good order in the classroom; pupils are not responsive to your guidance; your relationship with individual pupils at Moses Cleaveland and Patrick Henry Schools have on occasion resulted in attitudes of bitterness on the part of pupils and parents; in the past ten years you have never been rated better than fair under any principal under whom you have worked: your capacity as a teacher has been questioned officially in 1930 and 1939 without resulting improvement; and you are currently rated by the directing Supervisor of Mathematics as 'the most unsatisfactory teacher of mathematics in the Cleveland Public Schools at this time.'"

The claims and errors assigned by teacher, in addition to the one of unconstitutionality of the statute, can be reduced and be included within the following items:
1. Board lacked jurisdiction. No charges conforming to the requirements of the statute having been filed.
2. Charges not sustained by the evidence adduced.
3. Charges and evidence related to matters prior to the effective date of the Teachers Tenure Act, June 21, 1941, and therefore were improperly considered.
4. Errors in receiving and rejecting evidence at the hearing.
5. Error in permitting trial counsel appearing for the board to participate.

6. Misconduct of the board and personal prejudice of certain members of the board.

7. Error in mode rendering judgment not majority vote.

8. Error in permitting chairman to make speeches to public during trial.

9. Error in not considering teacher certified to teach any subject in the Cleveland Public Schools.

The transcript in this cause is voluminous (785 pages) and it is not practical to extend this memorandum to detail comment beyond stating briefly the court's views after perusal and consideration of the entire record and exhibits.

1.

Jurisdiction. It is not to be overlooked that the General Assembly when enacting the statutory provision here specifically under notice, and sections related to it, did not grant to the board any extraordinary new powers to discharge employees, whether teachers or other, but actually placed a limitation upon their powers as related to teachers. Prior to the enactment of the Teachers Tenure Act the board could refuse to renew the teaching contract of a teacher at any time for any cause that it deemed proper and its action in that regard was final and not subject to review by others. The right to discharge teachers does not come into being under the Tenure Act—it is already there. The board was vested with the right to discharge, and still is. In response to the general clamor for "security" of pay, position and privilege in this present-day order of ours the General Assembly extended a degree of it to teachers by dictating to Boards of Education that henceforth they must not discharge a teacher unless certain conditions exist or facts are shown and that a teacher warned of an intention to so discharge him or her may be heard, privately or publicly at his or her option. The exercise of jurisdiction to hear and determine such a hearing is merely a recognition by the board of the limitation upon its rights and the expansion of the rights of the teacher involved. The board is still the hiring and discharging body and there is no requirement of hearing of any kind upon a discharge except upon the invoking of it by the teacher. The hearing is still a performance of an administrative function of the board, and it is clothed with jurisdiction to perform those functions.

2.

Charges not sustained by evidence adduced. It is not for this court to weigh the evidence adduced but to determine whether it was fairly produced; that it was directed to proof of the charges filed; and that the proceedings were free from arbitrary, oppressive, unreasonable or fraudulent

conduct. If there was presented substantial and credible evidence to support the charges and a fair administrative hearing was had, this court cannot substitute its judgment for the judgment of the administrative authorities. In a large school system (in Cleveland, 152 schools—p. 83) it is not possible for the superiors to have constant or close contact with those subject to their supervision within the system and the true measure of a teacher's qualifications and quality must be based on the accumulation of contact, observation, general and special results and the judgment of perhaps a number of people in concert or separate and apart from each other.

Looking to the record in this cause we find that Mark C. Schinnerer, the Superintendent of Schools, testified that the Assistant Superintendent is responsible to the Superintendent; Principals are responsible to the Assistant Superintendent and the Teachers are responsible to the Principals. (p. 39.) In addition, there is a Personnel Bureau which keeps records of the service of teachers. (pp. 40 and 41.) Miss McCarthy is Chief of the Bureau of Personnel. (p. 47.) Miss Katherine A. McCarthy testified that she had been a Principal since 1923 and that thirteen years of her principalship had been in Moses Cleaveland School, and that she had Teacher there under her from 1936 to 1944 (p. 61 and 62). In 1944 she asked that Teacher be transferred (p. 62). Her request was contained in her letter dated June 9, 1944 (Superintendent's Ex. 3), which, in part, is as follows:

"Our records at Moses Cleaveland Junior High School show that for over a period of seventeen years the mathematics department has been below the average for the city. Our P. L. R. range is above average. When you transferred Mrs. Moore to us, we were able to reach a place well above the average in achievement for the brief period she was here. We have dropped again to our former level. For eight years I have been aware of this problem in the community. The spirit of antagonism in the neighborhood against this department on the part of parents as well as pupils makes it necessary for me to ask for the transfer of Miss Gertrude Applebaum from our school.

"Miss Applebaum has been teaching for twenty-two years, seventeen of which were at Moses Cleaveland School. I have not found her to be successful in instruction as evidenced in power of her pupils—their self-control, judgment and instruction in carrying on activities and successful results in achievement tests. * * *"

. P. .L. R. referred to in her letter is intended to indicate "probable learning rate." The witness testified that she had reported to Mr. Swinnerer in 1939 that Teacher's work was very poor" (p. 66) and that "We had plenty of conversation with her because we were always aware of her poor work. (p. 70.)

Q. Did she (Teacher) maintain good order in the classroom? A. No. (p. 79.)

\*　　　\*　　　\*　　　\*

One E. T. Cockrell, Principal of Empire Junior High School testified that he had been a Principal for thirty-five years; in Cleveland thirty years; in Empire twenty-five years. (p. 104.) His testimony is directed chiefly to 1944-1945 when he had Teacher on his faculty. Teacher taught Mathematics (and English one semester). (p. 105.) "She was a rather uninspiring teacher. When I would go into her room she was generally seated. I called her an ineffective teacher."

After testifying that he had, in March 1945, rated Teacher in Grade 3 (Superintendent's Ex. 3-A) and in May 1945 had written to Mr. Schinnerer, then Assistant Superintendent, in reference to a transfer to be made, in mathematics, saying:

"I consider that all these teachers are better teachers of mathematics than Miss Applebaum." (Superintendent's Ex. 3-B.)"

He then testified that in June 1949 (Superintendent's Ex. 3-C) he received a request for a "fair and frank appraisal of her (Teacher) work, and indicated whether you would be willing to have her assigned to Empire." This request was from E. L. Butterfield, Assistant Superintendent. Cockrell's reply was as follows:

Superintendent's Ex. 4.

"I certainly would not want Miss Applebaum assigned to Empire Junior High School. She was suggested as a replacement teacher here last September and again in January. I protested vigorously both times and was relieved that other assignments were made. ·

"She was at Empire only one year 1944-1945. I signed approval of her re-appointment that year, but she was rated at the bottom of the Empire list of teachers. When an enrollment decrease made imperative a decrease of one mathematics teacher, I rated her as the least desirable of the group and was pleased when she was assigned to another school.

These ratings by me are on file at Headquarters in correspondence to Dr. Schinnerer under dates of March 21 and May 25, 1945.

"I remember Miss Applebaum as personally agreeable and cooperative, but ineffective and uninspiring in the classroom. She was not very energetic and was generally seated in class. She made little or no contributions to school activities of the kind that mark the desirable teacher."

      *         *         *         *

One Oliver J. Deex testified that he had been Principal at Patrick Henry Junior High School since 1944. Teacher was there as a teacher 1944-1948. (p. 202 and 208.)

Q. State your opinion of Miss Applebaum's work as teacher at Patrick Henry Junior High School for four years.

A. My opinion is that her work was unsatisfactory.

Q. Will you state in more details on what you base that conclusion?

A. On the grounds that her relationship with pupils was poor; that her conduct of assignments in class, study hall and other activities was inferior; that her guidance of individual homeroom pupils was not at all satisfactory; that many pupils and some parents complained bitterly. (p. 205 and 206.)

He testified that he had visited Teacher's homeroom; had visited her classes and had observed her conduct of the classes. (p. 207.) He also testified that he had discussed her deficiencies with Teacher on more than one occasion and that those discussions were not followed by an improvement. (p. 207.)

      *         *         *         *

One Herschel Grime, Ph. D. testified that he is Directing Supervisor of Mathematics in the Cleveland School System; that he visits various schools, and classes in mathematics and that he has been such Supervisor since 1937. (p. 249.)

He had observed and formed an opinion about the teaching capacity of Teacher in the particular field; that he had visited Teacher's class at Patrick Henry as late as April 5, 1949; and also on previous dates (p. 250). Without detailing his testimony as shown on p. 250 et seq of the record it is sufficient to view his summarization of it and his judgment generally as contained in his letter to E. E. Butterfield, dated April 20, 1949, and shown as Superintendent's Ex. 6-A when he said:

"On April 5 of this year, I visited a class taught by Miss Gertrude Applebaum at Patrick Henry Junior High School. I was very much disappointed in what I saw.

"Miss Applebaum failed entirely to interest her pupils in what they were supposed to be doing. In fact, I do not believe she made any attempt to do so. Her pupils showed a lack of respect for her and I am convinced they realized the fact that she was doing little or nothing to help them in their work.

"When I entered the room, Miss Applebaum was seated at her desk and the pupils were working from their books. When the teacher saw that she had a visitor, she got up, went to the blackboard and wrote out the homework assignment for the following day. At the close of the period, she called the pupils' attention to this assignment, but made not the slightest effort to teach them how to do the work assigned.

"This teacher has convinced me that she makes no provision for individual differences among pupils. Her conduct of the class and the assignments made are the same for all her classes in a particular grade. This plan works a definite hardship on most pupils, since an assignment cannot, at the same time, be satisfactory for bright or average pupils and for very slow pupils.

"Each time that I have been in Miss Applebaum's classroom, I have spoken to her before leaving. Somehow or other she has been unable or unwilling to understand what I have tried to tell her. At the end of my last visit I was unable to criticize her teaching or to suggest how she might improve it, for the simple reason that, although she was in the classroom with her pupils, she had done no teaching that period. Before I left, I asked her if she would invite me out some day when she was teaching, so that I might see what she is doing and then offer suggestions as to how she might improve.

"In my opinion, based on observation of her work at Moses Cleaveland and Patrick Henry, Miss Applebaum has a very limited conception of what a teacher is supposed to do in a mathematics classroom; furthermore, I do not believe that she is or ever has been very much interested in learning how to teach. I believe that she is totally unable to interest her pupils in what they are doing and to encourage them to do good work.

"I consider Miss Applebaum, by far, the most unsatisfactory teacher of mathematics in the Cleveland Schools at this time."

This was an official report of the Directing Supervisor of Mathematics to the First Assistant Superintendent of Schools.

\*         \*         \*         \*

It is difficult to understand how it can seriously be contended that the record does not contain evidence which, if believed by the board, is sufficient to sustain the charge of gross inefficiency.

### 3.

Complaint of matters which occurred prior to effective date of Teachers' Tenure Act. There exists no basis whatever for this claim. The rule as to the admissibility of evidence touching matters occurring prior to the effective date of the Act has been laid down by the Supreme Court of Ohio. The evidence is to be based on service since the effective date of the Act but the quality of service prior to the effective date of the Act may also be considered cumulatively with service following such date. The problem is not in fact presented in the instant case because most, indeed practically all, of the testimony above quoted and mentioned is testimony of performance since 1942.

### 4.

Errors in receiving and rejecting evidence on trial. In a hearing before the board under the statute there are many steps necessarily involved which are not set forth in the statute.. Those details furnish a fruitful field for differences of opinion. It is safe to say that very few public hearings have ever been held in Ohio under the statute and the record in this case discloses that this is the first of its kind ever conducted by the board of the most populous school district in our state. In an opinion rendered June 9, 1945 on request of the Superintendent of Public Instruction, Columbus, the then Attorney General of Ohio endeavored to furnish some guide to be followed in hearings by boards under the statute. (Opinion No. 299.) He held the hearing to be an administrative proceeding but that the board conducting such a hearing is exercising quasi-judicial powers. He maintained that while the board is not bound by the strict rules of court procedure it should nevertheless observe the elementary and fundamental principles of judicial inquiry. He outlined four principle concepts (subject to many limitations and exceptions) which should be borne in mind by any board or quasi-judicial body in the conduct of a hearing involving rights and property.

FIRST: The common law ideal of fair procedure involving the requirements of sworn testimony, cross-examination, rebuttal, formal introduction of evidence, right of subpoena etc.

SECOND: Admission of only trustworthy evidence, as such is generally understood under our system of government and jurisprudence.

THIRD: The shielding, for social reasons, of certain so-called privileged communications had in confidential relationships.

FOURTH: Protection to the witness from requirement of self-incrimination or involuntary confession.

The statute provides that a record of the proceedings shall be taken, and that record may, as in the instant case, be required for review. It is therefore important that it be in reasonably good form and that the testimony be presented, insofar as reasonably possible, in a connected and chronological order. Upon a view of the entire record in this cause Teacher has less ground for complaint than the board concerning the taking and rejecting of testimony. Teacher contended for the "court trial" type of hearing while the board properly viewed itself as an administrative body conducting a quasi-judicial hearing. In that view it was clearly correct and, on the whole, it must be said that every opportunity was afforded Teacher to protect her position.

5.

Error in permitting trial counsel appearing for the board to participate. Charles W. White, Esquire, a member of the staff of the Director of Law of the City of Cleveland appeared as counsel either for the board, for the Superintendent, or both. Representation in legal matters of the board, its officers and interests, is provided by law and this court is still unable to understand the ground of objection to counsel in this instance. The matter does not call for serious discussion for the reason that it was undoubtedly the privilege of the board and the Superintendent to present the entire matter in a manner and by persons of their own choosing, subject only to ethical and orderly procedure.

6.

Misconduct of the board and personal prejudice of certain of its members. There is no evidence to uphold or justify such a contention. The board and every participating member exhibited almost unlimited patience throughout the long and what must have been tedious proceeding.

7.

Error in mode of rendering judgment. As already stated, five of the seven members of the board conducted the hearing and at the close of the testimony and arguments the members of the board "retired to closed session." (p. 781.)

Before the board retired counsel for Teacher requested a yea and nay vote on the decision to be rendered and the board by its Chairman indicated that the members would reserve the right to "to make the decision in our own manner." (p. 781.) Immediately following the closed session the board re-convened in formal, public session and the board chairman announced that "the board has voted to sustain the recommendation of the Superintendent, Dr. Mark C. Schinnerer, in terminating the teaching contract of Miss Gertrude Applebaum."

The statute does not prescribe the mode of rendering such a decision and it follows that the most that can be asked is that the decision be clear and be that of a majority of the membership. Five of the seven members were present; the chairman announced in their presence that "the board has voted." If that was not a fact it was then the duty of any member not concurring to express his dissent. This objection is very technical—too technical to be given serious consideration as a basis for a successful attack in the light of the procedure actually followed in this case.

8.

Error in permitting chairman of the board to make speeches to public during trial. He or she is a wise chairman indeed who knows when not to make a speech. Teacher had her choice of kind of hearing under the provisions of the statute. She demanded a "public hearing." As already indicated, this was the first public hearing ever held by the board in such a proceeding. That being so, this was the first time for members of the Cleveland public to attend such a hearing. The members of the public who know anything at all about matters such as were involved in this hearing, and were testified to, are so few and far between as to appear almost non-existent. The "speeches" complained of were not in the nature of testimony nor could they possibly be prejudicial to Teacher. They were an effort to lead the unenlightened members of the public into a slight understanding of the mysteries involved in the operation of a public school system. In any event, they must have been a refreshing cooler in what appears to have been a very torrid struggle. Just what prejudice could possibly result from them was not pointed out to this court and he does not believe that any prejudice did result.

9.

Error in not considering Teacher certified to teach any subject in the Cleveland Public Schools. On its face this claim would appear to be one not free from difficulty but it must be judged in the light of the entire record. If Teacher is asserting her certification to teach any subject in the public schools her ability or lack of ability in the field of mathematics can be the proper subject for inquiry. In the light of the suggestion on her behalf in that connection in this cause it is proper to mention that it does not appear that any time Teacher has even suggested either a willingness or desire to be assigned to the teaching of an other subject or subjects. That does not seem to be the issue. It is not claimed that Teacher is a grossly inefficient

mathematician but it is claimed that she is a grossly inefficient teacher and it is to be assumed that the board when hiring persons who are generally certified as qualified to teach any subject taught in the public schools is hiring teachers as distinguished from specialists in any particular field, and that ability to teach is one of the real qualifications necessary to appointment in the first instance and one that must be maintained, and perhaps improved, as the days go by in order to entitle the appointee to continue in the service.

        *           *           *           *

The board continues to be the agency clothed with the administrative duty of employing and discharging teachers, subject only to the exercise of sound judgment and observation of the specific restrictions or conditions now imposed by law. The board conducted a public hearing in the instant case, it heard a number of witnesses in support of the charges filed. It also heard a number of witnesses on behalf of Teacher. It had a right to weigh the testimony and, in so doing, to consider those elements which engraft credence upon the statements of others, and especially in a case such as this, the opportunity which the witnesses had had to observe and know the facts, circumstances or general situation testified to. The court, upon consideration of the record, finds that there was ample evidence, if believed, to support the charge; that it was the function of the board to weigh that evidence; that ample opportunity was given Teacher to be heard on her own behalf and by others on her behalf; that the record is devoid of evidence which could be held to support any claim of arbitrary, oppressive, or unreasonable conduct or action. Fraud was not claimed or even suggested. It follows that the decision of the board must be affirmed and the petition dismissed at Teacher's costs. An order so doing will be entered as of this date.