BOARD OF EDUCATION, LAUREL SPECIAL SCHOOL DISTRICT, Appellant, *v.* ALONZO HILTON SHOCKLEY, JR., Appellee, Defendant Below.

(*November* 9, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Robert W. Tunnell* (of the firm of Tunnell and Raysor) for appellant.

*Joseph H. Geoghegan* (of the firm of Berl, Potter and Anderson) for appellee.

Supreme Court of the State of Delaware, No. 29, 1959.

BRAMHALL, J.:

This appeal relates to the questions: (1) Was there substantial evidence of wilful and persistent insubordination within the meaning of the Teacher's Tenure Act?; (2) Was the action of the Board in refusing to admit certain evidence and to make an offer of proof with reference thereto error?

Appellee, defendant below, has been continuously employed by the Department of Public Instruction for the State of Delaware since September 1, 1948, and by the Board of Education of the Laurel School District since September 1, 1950. Appellee has teacher tenure status under *Title* 14, *Del. C.* § 1403.

Appellee has raised a question as to the sufficiency of the evidence. It will therefore be necessary to cite the pertinent facts with some particularity and at some length. In doing so we shall adopt that version which the Board of Education might reasonably have found to be justified by the evidence.

On August 1, 1955, appellee was employed by the Board as "Principal of the Dunbar School and Teacher of Social Studies, Physical Education and other assigned duties", for the school year beginning July 1, 1955, and ending June 30, 1956. The following year he was employed as "Principal and Teacher in the Junior High School and other assigned duties". He was re-employed thereafter in the same capacity until June 30, 1958.

On August 29, 1956, in a conversation between appellee and the Superintendent, appellee made a request of the Superintendent that appellee be excused from any teaching duties. The Superintendent informed appellee that in granting such request

he would be exceeding his authority since there must be fifteen teachers in a school to justify the employment of a full time principal. The Superintendent advised appellee that the least he would expect of him in the way of teaching would be two classes per day. Appellee expressed some misgivings at the assignment but did not expressly refuse to obey these instructions. Appellee never taught two classes; he "probably" taught one for a part of the time during the school year 1956-1957.

In a schedule prepared in the fall of 1957 by appellee and presented to the Superintendent for approval, it was indicated that appellee was teaching one section of Ninth Grade Social Studies only. In November of 1957 the Superintendent first learned that appellee was not teaching any classes. On December 2, 1957, the Superintendent wrote to Dr. Elizabeth C. Lloyd, Director of Teacher Education and Professional Standards, State Department of Public Instruction, notifying her that appellee "was not teaching grades or subjects at the Dunbar School". At the request of Dr. Lloyd, he instructed appellee and all other teachers to fill in and return to his office individual schedule forms. Appellee failed to comply with this request. The forms sent in by another teacher at the school, Mr. Parker, indicated that he, Mr. Parker, was teaching the class supposedly being taught by appellee. When the proposed schedule for the second semester, 1958, indicated that appellee had again failed to assign to himself any teaching duties, the Superintendent, in an interdepartmental communication, dated February 10, 1958, called to the attention of appellee that at the beginning of the school year he had requested that appellee assume the responsibility for two classes. He requested that appellee take over a second period Social Study course and relieve Mr. Parker. To that communication the Superintendent received no reply from appellee, nor did appellee revise his schedule as requested by the Superintendent. The Superintendent testified that he had had more than one conversation with appellee concerning his teaching duties. He testified that shortly after this communication of

February 10th, the Parent Teacher's Association of the Dunbar School, around February 19th, expressed concern over the fact that as a result of the new schedule, several sections would be deprived of certain instructional advantages in some areas of instruction. Upon receipt of that communication, the Superintendent talked with appellee and called his attention to the fact that in a telephone conversation with the secretary of the Parent Teacher's Association he had been informed that the schedule was changed because the Superintendent had ordered it to be done. As a result of this complaint and because of the lack of a satisfactory response on the part of appellee, the Superintendent scheduled a meeting with the faculty members of the Dunbar School on or about February 26th. At that meeting, in the presence of appellee, who was sitting next to him, the Superintendent discussed the schedule, pointing out that appellee had been specifically instructed to teach two classes. Appellee still did not revise his schedule. The Superintendent further testified that for a period of more than a year and a half appellee had failed to comply with his instructions to teach two classes. Dr. Lloyd testified that since August 29, 1956, appellee had not referred to her office any communications regarding certification in the area of Social Studies, as appellee under such instructions was required to do.

On April 9, 1958, the Superintendent went to the Dunbar School and questioned appellee about his teaching assignment. Appellee replied that he was not teaching, adding: "I tried that for a while last year and it didn't work." On April 18th, 1958, the Superintendent sent to appellee, by registered mail, a letter in which he stated that his visits to the Dunbar School gave no evidence that appellee was carrying out his responsibility for teaching as instructed by the Superintendent. He again reminded appellee that he had been instructed to teach two classes. The Superintendent then stated: "Any reasons for your inability or unwillingness to carry out this assignment should now become a matter of record." Although this was a formal

letter requesting a written reply, the Superintendent received no communication from appellee. Six days later, when the Superintendent visited the Dunbar School, he asked appellee "point-blank" if he had started to teach two classes, to which appellee replied: "No. It is impractical. There are only twenty-seven days of school left." Appellee then informed the Superintendent that his educational training was on a par with that of the Superintendent and stated that he took exception to the fact that the Superintendent's letter of April 18th was sent by registered mail. The Superintendent testified that, although on April 22nd he had recommended that appellee be re-employed, he came to a realization that his confidence in appellee's eventual acceptance of the teaching assignment had been misplaced. At the meeting of the Board on April 25th the Superintendent presented to the Board a statement of his difficulties with appellee and requested permission to withdraw his recommendation. This request was granted.

The Board notified appellee by letter of the termination of his employment for wilful and persistent insubordination. Appellee requested a public hearing, which was granted. The Board upheld its previous decision. In an appeal to the Superior Court the decision of the Board was set aside and appellee ordered reinstated. The Board appealed to this court.

14 *Del. C.* § 1414, relating to appeals in such cases to the Superior Court, provides:

"The cause shall be determined by the Court from the record which shall include a certified copy of the evidence, findings and the decision of the board, without the aid of a jury. * * The Court shall decide all relevant questions of law and all other matters involved, and shall sustain any board action, findings and conclusions supported by substantial evidence. The Court may reverse, affirm or modify the decision of the board or remand the cause to the board for a rehearing."

The first question which this court must determine

is: Was the finding of the Board supported by substantial evidence as required by the statute?

Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Application of *Hackensack Water Co.,* 41 *N. J. Super.* 408, 125 *A.* 2d 281; *Sinclair v. Director of Division of Employment Sec.,* 331 *Mass.* 101, 117 *N. E.* 2d 164; *Kelleher v. Unemployment Comp. Bd. of Rev.,* 175 *Pa. Super.* 261, 104 *A.* 2d 171, 41 *A. L. R.* 2d 1155. In this state, in *Workmen's Compensation* cases, substantial evidence has been defined as evidence in the record "from which its conclusion could have been fairly and reasonably drawn". *Wright v. American Brake Shoe Co.,* 8 *Terry* 299, 90 *A.* 2d 681; *LeTourneau v. Consolidated Fisheries Co.,* 4 *Terry* 540, 51 *A.* 2d 862; *Dallachiesa v. Gen. Motors Co.,* 1 *Storey* (51 *Del.*) 130, 140 *A.* 2d 137. In the *LeTourneau* case the court stated that the reason underlying this rule is premised upon the fact that the Board below sees and hears the witnesses and is therefore better able to determine the credit and weight to be given their testimony.

As we view the function of the Board, it is its duty to weigh and appraise the evidence, determine the credibility of the witnesses, resolve issues of fact and draw its conclusions and inferences therefrom. *Pennsylvania Labor Relations Board v. Elk Motor Sales Co.,* 388 *Pa.* 173, 130 *A.* 2d 501. The statute fixes the power of the Superior Court upon appeal to a determination of whether or not the findings of the Board are supported by substantial evidence. If there was presented substantial and credible evidence to support the charges and a fair administrative hearing was had, the Superior Court cannot substitute its judgment for the judgment of the school authorities. *Applebaum v. Wulff, Ohio Com. Pl.,* 95 *N. E.* 2d 19; *Wallace v. Bd. of Education of City of Los Angeles,* 63 *Cal. App.* 2d 611, 147 *P.* 2d 8. See 78 *C. J. S. Schools and School Districts* § 209 (3), p. 1110.

We think that the evidence in this case was sufficient to sustain the finding of the Board that appellee was guilty of wilful and persistent insubordination. This is demonstrated by the prolonged failure on the part of appellee to obey the instructions of his immediate superior for a period of approximately a year and a half. Such failure on the part of appellee under the circumstances and for such a long period of time amounted to wilful and persistent insubordination. See *Appeal of Ganaposki*, 332 *Pa.* 550, 2 *A.* 2d 742, 119 *A. L. R.* 815; *Board of School Directors of Ambridge Borough School District, Beaver County, v. Snyder*, 346 *Pa.* 103, 29 *A.* 2d 34.

It is important that the authority of Boards of Education to enforce discipline in teaching staffs be maintained by the courts for the efficient functioning of the school system. Consequently, after a finding by a Board of Education adverse to a teacher resulting in the termination of the teacher's employment, upon appeal the teacher bears the burden of demonstrating that the Board's action in terminating his employment was not based upon substantial evidence, but was in fact arbitrary or capricious. Courts should be reluctant to set aside findings of a Board of Education after public hearing unless the record clearly contains no substantial evidence supporting findings of the Board.

Appellee complains of the fact that the Board is acting as prosecutor, judge and jury. He cites authorities for his contention that the presumption in favor of the acts of a judicial or quasi-judicial tribunal does not apply with the same force to a tribunal which prosecutes as well as sits as a court of justice.

There is no question but that a court under such circumstances will scrutinize carefully the act of such a body. In the case of *Application of Diamond State Telephone Co. for Changes in Rates, in Accordance with Section 151 of Title 26 of the Del. C. of 1953, Del.*, 149 *A.* 2d 324, in commenting upon the

work of the Public Service Commission, this court said that the courts are required in such cases to examine the evidence before the Commission and the reason upon which its findings are based. But the plain answer to appellee's contention is that Title 14, *Del. C.* § 1414, specifically provides that the court shall sustain any Board action which is supported by substantial evidence. We interpret this to mean that after the court has examined the record, including the testimony, if it finds that there was substantial evidence to support the finding of the Board, it must affirm. This would be true whether or not the court agreed with the finding of the Board. *Pennsylvania Labor Relations Board v. Elk Motor Sales, supra.*

Appellee contends that the Board deprived him of a substantial right by the excluding of the testimony of Dr. Lloyd—designated by appellee as his expert witness—and the testimony of appellee himself relating to a prior meeting of the Board approximately seven months previously.

Appellee asked Dr. Lloyd whether it was wise educational policy to change a teacher assignment with only twenty-seven days remaining in the semester. Upon objection this testimony was excluded.

We do not think the testimony was admissible because it was not based upon the evidence presented. The statement by the Superintendent to appellee on April 18th as to whether he was teaching was not an order to teach: it was an inquiry as to whether appellee had carried out an order previously given. Moreover, even if it was properly admissible, we do not see how appellee was harmed, since no one at the hearing contended that it would have been proper to compel appellee to begin teaching that late in the school year.

Appellee's second objection related to the refusal of the Board to permit appellee to testify, and to make an order of proof, relative to a meeting of the Board on September 5, 1957, at which meeting appellee had been requested to be, and

was, present. It is alleged by appellee that at that meeting he was questioned concerning an application which he had made for his Negro daughter to be admitted into the Milford white school. Counsel for the Board objected to this testimony and to the offer of proof. Counsel for appellee contended that it was pertinent to the charge of wilful and persistent insubordination upon which appellee was being tried. After the Board had sustained this objection appellee proceeded to make an offer of proof. Before the offer was completed counsel for the Board objected to the offer and was sustained. In his brief before this court, although he did not specifically so state at the hearing, appellee contended that this evidence was admissible as showing that the charge of wilful and persistent insubordination was not a bona fide charge against appellee but was a charge brought against him by the Board as a substerfuge because he asked to register his Negro daughter in a white school and that the Board first decided to terminate the services of appellee at the September meeting.

No authority is needed to show that appellee should have been permitted to complete his offer of proof and that he should have been given an opportunity to prove any bias existing on the part of the Board. The need for an unbiased Board, particularly in view of the fact that the Board was acting not only as prosecutor but as judge, is too apparent to be questioned. To refuse such offer was error which must be corrected.

The case must go back to the Board for the purpose of permitting appellee to submit testimony in support of said offer. As we understand appellee's offer, it was his purpose to show circumstances occurring at the hearing on September 5, 1957, which would have indicated bias and prejudice on the part of the Board against appellee, that the real charge against him was in asking to enroll his Negro daughter in a white school and that the charge of wilful and persistent insubordination was a subterfuge to cover up the charge made on September 5, 1957. We therefore direct that the Board shall permit appellee to

present testimony of any circumstances taking place at that meeting showing bias or prejudice on the part of the Board. Such testimony shall be limited to that purpose alone. No other evidence shall be received. The Board shall hear such testimony and make its determination. If it should sustain appellee's contention, then the charges against appellee shall be dismissed; otherwise, they will be sustained and the finding of the Board will be affirmed.

We appreciate the incongruity in directing the Board to sit in determining whether or not it was guilty of bias. Unfortunately, under the statute we see no other way by which this question may be determined. We have confidence that the Board will give appellee a fair hearing and make a just determination of this question. In any event, its determination, if adverse to appellant, will be reviewable by the Superior Court.

The order of the Superior Court of April 27, 1959, is reversed, and the case is remanded to that court with instructions to vacate its order and to remand the case to the Board for further proceedings in accordance with this opinion.