**LAKE FOREST SCHOOL DISTRICT, Petitioner, Appellant,**

v.

**WOODBRIDGE SCHOOL DISTRICT and the State Board of Education, Defendants, Appellees.**

Supreme Court of Delaware.

Submitted April 17, 1979.

Decided May 11, 1979.

---

Roy S. Shiels of Brown, Shiels & Barros, Dover, for appellant.

James D. Griffin of Griffin & Hackett, P. A., Georgetown, for appellee Woodbridge School Dist.

Regina M. Small, Deputy Atty. Gen., Wilmington, for appellee The State Bd. of Ed.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

DUFFY, Justice:

The issue in this appeal is the location of the geographic boundary line between two School Districts in Kent County, Lake Forest and Woodbridge. Both The State Board of Education and the Superior Court ruled in favor of Woodbridge, and we affirm.

## I

The boundary line between these two Districts was stated in a description published in 1953 (the so-called "old description"). Apparently, the old description lacked technical precision, but it was used for most if not all official purposes. Then, in 1970, Lake Forest adopted a new description of the line (the so-called "modern description") which Woodbridge approved in 1974.

The change in the description of the line changed the location of the boundary and that, in turn, affected some taxable property and a few families with schoolchildren. The change enlarged the Lake Forest District at the expense of the Woodbridge District. The property in the disputed area, that is, the area between the old and modern descriptions of the boundary line, is the prize in this case.

At first, there were no changes made with respect to the assessment of property in the disputed area. Lake Forest did make several unsuccessful attempts to transfer certain properties in the area to its own tax rolls, but the owners continued to pay taxes to Woodbridge and almost all school-age children in the area continued to attend Woodbridge schools.[1] The present dispute arose in 1975 when a student from the disputed area who had attended Woodbridge schools, sought enrollment in a Lake Forest school.

## II

The State Board of Education took jurisdiction of the dispute under 14 *Del.C.* § 1025, which reads in part as follows:

"In case of doubt or controversy as to the correct location of the existing boundary or boundaries of any reorganized school district, the State Board of Education shall fix and establish the boundaries after examining the available records and after due hearing of the owners of the property that may be involved. This sec-

---

1. At the time of oral argument, twenty-three of twenty-five school-age children attended Woodbridge schools.

tion applies where there is uncertainty as to the existing boundaries of a district. The power to change or alter deliberately the boundaries of a reorganized school district is governed by § 1026 of this title." [2]

Proceedings before the Board are governed by the Administrative Procedures Act, 29 *Del.C.* § 6461. After a hearing under § 6424, the Board determined that there was "doubt or controversy" as to the location of the boundary line, that the respective School Districts had not intended to alter the boundary by adopting a new description thereof, and that the old description should be made precise and should then serve as the true boundary. Lake Forest then appealed to the Superior Court, which found that there was substantial evidence to support the Board's finding that the Districts were mistaken as to the effect of the modern description. Compare *Board of Education, Laurel Sp. Sch. Dist. v. Shockley,* Del.Supr., 155 A.2d 323, 327 (1959). Since there was uncertainty as to the location of the boundary, the Court concluded that § 1025 applied and, there-

fore, it affirmed the Board's decision. Lake Forest then docketed this appeal.

### III

We find no error in the rulings by the Board and the Superior Court. Procedurally, the Board's decision complies with § 6428. The evidence shows that there was not an agreement by the parties to *change* the existing boundary by adopting the modern description. At most, the parties sought to clarify what they considered to be the true boundary, as set forth in the imprecise old description. Under these circumstances, it is clear that there was "uncertainty as to the existing boundaries," and that 14 *Del.C.* § 1025 applied.

Affirmed.

2. In contrast, 14 *Del.C.* § 1026 provides in part as follows:

"(a) The State Board of Education may, in accordance with this section, change or alter the boundaries of any reorganized school district except the reorganized district of the City of Wilmington, the boundaries of which shall at all times be the same as the boundaries of the City of Wilmington.

(b) Before making changes in the boundaries of a reorganized school district, the State Board of Education shall consult with the school boards of the districts affected by the proposed change. Thereafter, the State Board of Education shall submit for approval or rejection the question of the change of

boundary to the qualified voters of the district or districts affected at a special referendum to be held for that purpose, after 2 weeks notice of the referendum and proposed change has been posted at the school or schools of the district of districts affected. The referendum shall be conducted in each district by the school board of the district. Any person who possesses the qualifications prescribed in [section] 1077 of this title may vote at the referendum. The question shall be determined by a majority of the total vote cast in each district affected. Each school board shall immediately certify to the State Board of Education the result of the referendum in the district."