## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHELLE TOOTHMAN, and     :
SHINING TIME DAYCARE        :
CENTER,                        :
                                   :
        Appellants,            :       C.A. No.: K21A-06-005 JJC
                                     :
         v.                      :
                                     :
DELAWARE DEPARTMENT OF    :
EDUCATION,                  :
                                     :
        Appellee.              :

Submitted: May 2, 2022
Decided:  August 3, 2022

## <u>ORDER</u>

*Upon Consideration of Appellants' Appeal from the Delaware Department of Education* – **AFFIRMED**

On this 3rd day of August 2022, after considering the decision below, the record,  and the parties' arguments regarding this administrative appeal, it appears that:

1.     Appellants Michelle Toothman and Shining Time Daycare Center (collectively referred to as "Shining Time" or the "Facility")  challenge the Secretary of the Department of Education's decision to revoke Shining Time's license to provide child care services.   In 2019, the Office of Child Care Licensing ("OCCL") had placed Shining Time on probation for repeated violations of OCCL regulations that provide health and safety standards for child care services (hereinafter, the

"Regulations").[1] During Shining Time's probation, it continued to violate the Regulations. OCCL then issued an order revoking its license. The Facility appealed the matter, and a hearing officer held a hearing to review the decision. He found that Shining Time committed numerous violations that would revocation.[2] Nevertheless, as a penalty for the violations, he recommended that the Secretary provide the Facility an additional opportunity to address the issues through probation or settlement. The Secretary then reviewed the hearing officer's recommendations and the record and rejected the hearing officer's penalty recommendation. Instead, she upheld OCCL's decision to revoke Shining Time's license.[3] The Facility then appealed the decision to the Superior Court.

2. As to the applicable administrative process, when OCCL seeks to revoke an existing child care license, it must first provide the licensee notice.[4] At that point, the revocation becomes final unless the licensee appeals OCCL's order to the Department of Education (the "Department").[5] On appeal, the Department must appoint a hearing officer to review OCCL's decision; the hearing officer then holds a hearing consistent with the requirements of Delaware's Administrative Procedures Act.[6] Thereafter, the hearing officer issues his or her report and recommendation to

---

[1] *See* 14 *Del. C.* § 3003A (providing that OCCL may prescribe rules and regulations for the standards of conduct of childcare facilities in the State of Delaware); 14 *Del. Admin. C.* § 933 (providing the regulations enacted by OCCL are referred to as "Delacare: Regulations for Early Care and Education and School-Age Centers" [hereinafter referred to as the Regulations]).

[2] *In re: Shining Time Daycare Center*, Report and Recommendations, at 12-14 (June 3, 2021) [hereinafter Hearing Officer's Report].

[3] *In re: Shining Time Daycare Center*, Final Decision, at 1 (June 10, 2021) [hereinafter Secretary's Final Decision].

[4] 14 *Del. C.* § 3004A(e).

[5] *Id.*

[6] *Id.* § 3004A(f). *See* 29 *Del. C.* § 10142(d) (providing "[t]he Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. The Court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency.")

the Secretary.[7]  The report must include a summary of the evidence, conclusions of law, and a *recommended* course of action.[8]  The Secretary must then accept, deny, accept in part, or deny in part the recommendations and issue a final decision.[9]  An aggrieved licensee may then appeal the Secretary's final decision to the Superior Court.[10]

3.    Here, the parties do not dispute that Shining Time committed the violations.  Rather, their dispute centers on the appropriate penalty.  The evidence of record includes OCCL's investigatory materials, OCCL's revocation decision, evidence presented to the hearing officer, and the testimony and arguments memorialized in the revocation hearing transcript.[11]

4.    As an overview of the facts of record, Shining Time's violations spanned from March 2014 through the hearing in April 2021.  Before OCCL issued its order revoking Shining Time's license, it had offered the Facility training to help it comply.[12]  From March 2014 through October 2019, the record reveals no less than thirty-seven alleged rule violations.  During that five-year and six-month period, OCCL had provided Shining Time multiple improvement plans.  OCCL also detailed written explanations of the violations and mandated corrective action.[13]   Finally, OCCL warned the Facility that continued noncompliance would result in either extended probation or revocation of its license.[14]

---

[7] *Id.* § 3004A(h)
[8] *Id.*
[9] *Id.* § 3004A(i).
[10] *Id.* § 3004A(k).
[11] Hearing Tr. at 1-90;  OCCL's Ex. 1-30 [hereinafter Ex.].  The Exhibits referenced in this order were admitted into evidence before the hearing officer by OCCL and were part of the record considered by the Secretary.
[12] Ex. 14.
[13] Ex. 1; Ex. 15.
[14] Ex. 1.

5.      Because the violations continued, OCCL placed Shining Time on a one-year probationary period beginning in December 2019.[15]    During this probation, OCCL conducted fourteen unannounced inspections and cited the Facility for multiple "serious noncompliance" violations during each of the visits.[16]    In total, Shining Time committed forty-four regulatory violations during the probationary period.    They included numerous health and safety violations such as: (1) failure to maintain proper staff-to-child ratios; (2) repeatedly allowing unqualified staff to be alone with children; (3) repetitive sleep safety violations; (4) failures to meet proper child capacities; and (5) submitting fraudulent corrective action documents.[17]  As a consequence, OCCL issued an order revoking the Facility's license;  this order and its exhibits provided a detailed written basis for the decision, which then became part of the administrative record.[18]

6.      After Shining Time received OCCL's revocation order, it appealed the decision to the Department and requested a hearing.  As a further accommodation to the Facility, OCCL nevertheless agreed to attempt to settle the matter with the Facility to address the ongoing violations while permitting it to continue to operate.   As a result, the hearing officer delayed the hearing for thirty days.   During those thirty days, Shining Time  agreed to hire a consultant to remedy its operations.[19]   It also agreed that the consultant must qualify as an early childhood administrator or curriculum coordinator.[20]   Furthermore, the parties stipulated that OCCL must first approve the consultant and that he or she would need to remain on site for a minimum

---

[15] Ex. 2.

[16] Ex. 30.

[17] *Id.*

[18] *Id.*

[19] OCCL 000004 (providing the email communications between the parties regarding the settlement agreement terms, the postponement of, and the re-scheduling of the revocation hearing); Hearing Tr. at 13:21-22.

[20] Hearing Tr. at 37:13.

of twenty hours per week.[21]   Although Shining Time agreed to the process, it failed to identify a qualifying consultant within the thirty days.   OCCL then provided it an extension to find one.[22]   In total, OCCL gave Shining Time ninety days to identify a consultant,[23] but it did not.

7.    The hearing officer then conducted the hearing.   There, Shining Time disputed none of the alleged violations from the time OCCL had placed the Facility on probation through the time of the hearing.[24]   In fact, it stipulated that those violations justified revocation of its license because of their cumulative effect.[25]   It argued, however, that another probationary period, or an attempt at settlement, would be the more appropriate penalty under the circumstances.[26]   After the hearing, the parties filed post-hearing written arguments to address the appropriate penalty.

8.    In the hearing officer's report, he explained what violations had led OCCL to revoke Shining Time's license.   They included the forty-four violations incurred over the probationary period from December 2019 through December 2020. They also included an additional thirteen violations by Shining Time from the end of the one-year probationary period through April 2021.   The most recent violation occurred only two weeks before the hearing.   In his report, the hearing officer confirmed that Shining Time admitted to them.[27]   Furthermore, he concluded that many of them, taken alone, or together, constituted serious regulatory noncompliance.[28]   Germanely, in his written recommendations to the Secretary, he included the following:

---

[21] *Id.*
[22] *Id.* at 54.
[23] *Id.*
[24] *Id.* at 12:4-7.
[25] *Id.* at 16-17.
[26] *Id.* at 17:5.
[27] Hearing Officer's Report at 12.
[28] *Id.* at 13.

> [m]any of the cited violations singularly and together are defined as 'serious non-compliance' under the definitions section of the . . . Regulations. Therefore, the Secretary would be legally justified in affirming OCCL's [revocation] decision in this case as a matter of law and fact.[29]

Notwithstanding that finding, he recommended that the Secretary provide Shining Time another opportunity to cure its operations before revoking its license.[30]

9. The Secretary then reviewed the record and issued her decision. In the decision, she did not recite the specific violations that supported the penalty that she imposed. She also made no additional findings of fact. Instead, she affirmed OCCL's initial revocation order which had set forth the violations in significant detail.[31] Shining Time then appealed the Secretary's decision to this Court.

10. In this appeal, Shining Time contends that the Secretary erred in two ways. First, it contends that her decision was arbitrary and capricious.[32] It primarily argues this because she declined to adopt the hearing officer's recommended penalty.[33] As a subset of that contention, the Facility argues that the Secretary's refusal to adopt the hearing officer's recommendation frustrates the purpose of the Regulations because the violations placed no child in danger of any "real harm."[34] Second, Shining Time argues that substantial evidence did not support the Secretary's decision. This second argument, however, focuses not on an alleged lack of evidence to support the Secretary's conclusion. To the contrary, Shining Time conceded that the evidence sufficiently supported the penalty of revocation. Instead, the Facility attacks the Secretary's alleged failure to articulate sufficiently what violations led her

---

[29] *Id.*
[30] *Id.* at 14.
[31] Secretary's Final Decision at 1. *See* Ex. 30 (providing in detail the incidents that occurred at Shining Times and the reasons for OCCL's revocation of the Facility's license).
[32] Appellant's Op. Br. at 10.
[33] *Id.*
[34] *Id.*

to reject the hearing officer's penalty recommendation.[35] In other words, Shining Time does not really challenge whether substantial evidence supported the decision. Rather, it attacks the form and substance of the Secretary's decision.

11. The Department counters that the Secretary's decision was supported by substantial evidence and was free from legal error. It contends that OCCL's original revocation decision, which was the order reviewed by both the hearing officer and the Secretary, fully supports the Secretary's final decision.[36] The Department further stresses that Shining Time contested none of the violations after OCCL first placed it on probation in December 2019.[37] Finally, the Department emphasizes that the Facility repeatedly ignored standards designed to ensure the health, safety, and well-being of the children under its care, and took no corrective action despite repeated opportunities to do so.[38]

12. Here, the Court's review is limited to determining whether the decision was supported by substantial evidence and was free from legal error.[39] Substantial evidence is evidence "which a reasonable mind might accept as adequate to support a conclusion."[40] A reviewing court must review the entire record to determine whether, on the basis of all of the testimony and exhibits before the agency, it could have reasonably reached the conclusion that it did.[41] When doing so, the Court does not weigh evidence, determine questions of credibility, or make its own factual

---

[35] *Id.* at 12.
[36] Appellee's Ans. Br. at 30.
[37] *Id.*
[38] *Id.* at 31.
[39] *Cooper v. Del. Bd. of Nursing*, 264 A.3d 214, 2021 WL 4938135, at *2 (Del. Oct. 21, 2021) (TABLE).
[40] *Id.* (citing *Del. Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 959 (Del. 2020)).
[41] *Cooper v. Del. Bd. of Nursing*, 2021 WL 754306, at *3 (Del. Super. Feb. 26, 2021), *aff'd*, *Cooper*, 2021 WL 4938135, at *2.

findings.[42] The Secretary's decision must be upheld unless it exceeds the bounds of reason.[43]

13. Regarding the applicable law, the General Assembly authorized OCCL to promulgate regulations that define what a licensee must do to retain its license.[44] In particular, the Regulations list non-exclusive reasons that constitute good cause to revoke a child care license.[45] They include the following:

(1) failure to comply with applicable provisions of . . . these regulations;
(2) violation of the terms or conditions of [a] license;
(3) fraud or misrepresentation in obtaining a license or in the subsequent operation of the center;
(4) refusal to furnish OCCL with files, reports, or records as required;
(5) refusal to permit an authorized representative of OCCL to gain admission to the center;
(6) engaging in any activity, policy, practice, or conduct . . . that adversely affects or is deemed by OCCL to be detrimental to the education, health, safety, or well-being of children; or
(7) conduct that otherwise demonstrates unfitness . . . to operate a center.[46]

Accordingly, a licensee who violates one or more of these requirements faces potential license revocation, at the discretion of the Secretary.

14. In this case, substantial evidence supported the Secretary's decision. The record she considered, which the Court has reviewed, included OCCL's detailed findings and reasoning.[47] In fact, OCCL's order was the primary order that the Secretary reviewed. That order lists at least forty-four health and safety violations *during the probationary period* that all directly supported OCCL's findings, that in turn, supported the Secretary's decision. The hearing officer's report confirmed those

---

[42] *Id.*
[43] *Id.*
[44] 14 *Del. C.* § 3003A(a)(1)a.
[45] 14 *Del. Admin. Code* § 933-13.4.
[46] *Id.* § 933-13.4.1.
[47] Ex. 30.

8

forty-four violations. The report then cited at least an additional thirteen violations that occurred during the four months from the end of the probationary period through the time of the hearing.[48] As a shortcut to a substantial evidence review, if the Court were to consider only one of these fifty-seven admitted violations, the fact that the Facility admitted to submitting fraudulent documents to OCCL singularly supports the Secretary's decision.[49] With so many additional violations confirmed in the record, there was more than substantial evidence to support the revocation of Shining Time's license. There was overwhelming evidence to support the decision.

15. Although Shining Time frames its argument in terms of a lack of substantial evidence, what it really contends is that the Secretary's decision was arbitrary and capricious on two bases. First, it argues that the Secretary should have unqualifiedly deferred to the hearing officer's factual findings and recommendations. Second, it argues that the Secretary acted arbitrarily because she did not separately recite what violations she relied upon when affirming OCCL. Neither reason warrants reversal.

16. As to the degree of deference due the hearing officer, the controlling statute entrusts the Secretary with the final decision-making authority.[50] In fact, the statute's reference to a hearing officer's "recommendations" to the Secretary

---

[48] Hearing Officer's Report at 13; Hearing Tr. at 22-25, 31-32, 34-35, 77-79, 80-84.

[49] *See* 14 *Del. Admin. Code* § 933-13.4.1.3 (providing for license revocation for submitting fraudulent documents in the operation of a facility). Although OCCL's revocation order cited forty-four total regulatory violations, there were many citations preceding its decision to place Shining Time on probation. Shining Time objected to the use of citations prior to the probationary period and by stipulation, the parties agreed that the hearing officer not consider violations that occurred *prior* to the probationary period. Hearing Tr. at 5-6. The Court acknowledges that stipulation in its review of the evidence on appeal, but nevertheless cites the previous violations for context. The hearing officer's report also cited at least an additional thirteen violations that occurred *after* OCCL's notice of intent to revoke the Facility's license. Hearing Officer's Report at 7-10. Those violations were considered by the hearing officer and presented to the Secretary before her decision.

[50] 14 *Del. C.* § 3004A(i).

9

singularly defeats the Facility's first contention.[51]  Moreover, the controlling statute gives the Secretary the option to "accept, deny, accept in part, and/or deny in part the recommendations of the hearing officer and issue a final decision."[52]  Contrary to Shining Time's position, there is no requirement that the Secretary either conduct an additional evidentiary hearing or defer completely to the hearing officer in the absence of one.   Rather, the Secretary may permissibly consider the entire record and remains free to disregard the hearing officer's penalty recommendation when doing so.  The Superior Court must uphold her decision if there was substantial evidence in the record to support it.

17.   Likewise, the Facility's allegation that the Secretary acted arbitrarily because she declined to recite specific violations also lacks merit.  The record before the Secretary included:  (1) a well-supported initial revocation decision by OCCL (which was the order subject to the administrative appeal considered by the hearing officer); and (2) the hearing officer's recommendation that included an express finding that the evidence and law supported revoking Shining Time's license.  While an administrative decision must set forth its reasoning sufficiently to enable judicial review,[53] the Secretary adequately explained her reasoning when she "affirmed" OCCL's revocation decision, while making clear that she reviewed the hearing officer's report but chose not to follow his penalty recommendation.[54]   The Secretary's decision provides Shining Time and this Court the ability to fully consider the Facility's appeal.  She did not act arbitrarily or capriciously when she (1) affirmed

---

[51] *See id.* § 3004A(h) (providing that the hearing officer will issue recommendations to the Secretary which shall include: (1) a summary of the evidence and findings of fact; (2) recommended conclusions of law; and (3) a recommended decision).

[52] *Id.* § 3004A(i).

[53] *See Christiana Town Center, LLC v. New Castle County*, 865 A.2d 521, 2004 WL 2921830, at *2 (Del. Dec. 16, 2004) (TABLE) (explaining that "[i]t is well-settled law that a quasi-judicial tribunal must state the basis for its decision, in order to allow for judicial review.").

[54] Secretary's Final Decision at 1.

OCCL's recommendation to revoke Shining Time's license, and (2) declined to accept the hearing officer's contrary recommendation regarding the appropriate penalty.

18.     As a final note, Shining Time relies significantly upon a Delaware Supreme Court decision in *Board of Education, Laurel Special School District v. Shockley*.[55]   That decision is both procedurally inapposite and distinguishable on the facts.  Namely, *Shockley* involved an appeal to the Superior Court regarding a local school board's disciplinary action against a district employee.[56]   There, the local board was the sole decision maker and after an appellate review for substantial evidence, the Delaware Supreme Court ordered a remand that directed the local school board to consider additional evidence.[57]   The *Shockley* case involved wholly different statutory and regulatory schemes than those that apply to Shining Time's license.[58]   Apart from those structural differences, Shining Time's admissions to numerous regulatory violations contrast wholly with the record evidence in *Shockley*. There, the Court remanded the matter to provide the employee the opportunity to present evidence that it refused to consider.[59]   Here, the Facility admitted to violations that conclusively resolved all evidentiary issues.  In this case, the Secretary acted within her authority and discretion.

**WHEREFORE**, for the reasons explained above, the Secretary's decision was supported by substantial evidence and was free of legal error.  The Secretary acted neither arbitrarily nor capriciously when she affirmed OCCL's revocation order even

---

[55] 155 A.2d 323 (1959).

[56] *Id.*

[57] *Id.* at 329.

[58] *See* 14 *Del. C.* §§ 1410-1414 (providing the appeals process for the termination of teachers examined in *Shockley*); *c.f.* 14 *Del. C.* §§ 3003A-3005A (providing the appeals process applicable to child care licensing decisions).

[59] *See Shockley*, 155 A.2d at 329 (explaining that the employee should have been permitted to complete his offer of proof and given the opportunity to prove any existing bias on the part of the Board).

though she did not restate each violation that she relied upon. Accordingly, the Secretary's decision affirming OCCL's revocation order is **AFFIRMED**.

      **IT IS SO ORDERED.**


/s/ Jeffrey J Clark<br>
Resident Judge

JJC:klc
*Via File & ServeXpress*