149 A.2d 331 (1959)
Alonzo Hilton SHOCKLEY, Jr., Appellant,
v.
BOARD OF EDUCATION, LAUREL SPECIAL SCHOOL DISTRICT, Appellee.
Superior Court of Delaware, Sussex.
March 16, 1959.
*332 Joseph H. Geoghegan of Berl, Potter & Anderson, Wilmington, for appellant.
Robert W. Tunnell, Georgetown, for the School Board.
*333 STOREY, Judge.
The above matter is before me on appeal from the decision of the Board of Education of the Laurel Special School District terminating the services of the appellant, Shockley, as of June 30, 1958, the end of the 1957-1958 school year.
Appellant, Shockley, had been continuously employed by the Laurel Special School District since September 1, 1950, as a certified professional employee, and had acquired teacher tenure status under the provisions of Section 1403, 14 Delaware Code 1953.
On April 22, 1958, appellant was recommended for renewal of his contract of employment for the school year 1958-1959 by Superintendent Elder of the Laurel Special School District. The Board of Education of said District, on April 24, 1958, refused to accept Superintendent Elder's recommendation for renewal of appellant's contract of employment for the following school year.
After the Board meeting on April 24, 1958, Superintendent Elder, for reason or reasons best known to himself, changed his mind and at the meeting of the Board held the next day, on April 25th, 1958, recommended the termination of the appellant's services as of June 30, 1958.
Under date of April 28, 1958, appellant received a registered letter from said Board of Education notifying him of the decision of the Board to terminate his services as of June 30, 1958, for the reason of "willful and persistent insubordination".
Appellant requested hearing on the charges, and the hearing was held on May 20 and 21, 1958 at the North Elementary School.
The decision of the said Board of Education, after a hearing, was that appellant, Shockley, had been guilty of "willful and persistent insubordination", within the meaning of Section 1411, 14 Delaware Code, 1953, and that his services were terminated as of June 30, 1958.
The questions presented for consideration are as follows:
1. Is the Board's decision to terminate appellant's services "supported by substantial evidence" of "willful and persistent insubordination" within the meaning of the teacher tenure law?
2. Did the Board deny appellant a substantial right by excluding "pertinent" testimony at the hearing?
3. Did the Board's refusal to permit appellant to make and to continue to make an offer of proof deny appellant a substantial right?
Question No. 1 presented above will first be considered.
Section 1414 of 14 Delaware Code of 1953 provides that on appeal the Court shall sustain any Board action, findings and conclusions supported by substantial evidence.
Is the action, finding and conclusion of the Board in the instant case supported by substantial evidence? The Delaware statute does not define the words "willful and persistent insubordination". The following are considered proper definitions for the purposes of this case:
The word "willful" has various meanings and is used to denote the quality of an act or the intent with which it is done. It is frequently used in the sense of intentionally, willingly, designedly, or with set purpose. Words and Phrases, Willful, Vol. 45.
The word "persistent" has been defined to mean "continuing or constant". Horosko v. Mount Pleasant Tp. School Dist., 135 Pa.Super. 102, 4 A.2d 601.
"Insubordination" was defined in State ex rel. Richardson v. Board of Regents of University of Nevada, 70 Nev. 347, 269 P.2d 265, 276, in the following language:
"From the many definitions found in the cases we may say without *334 greater elaboration that `insubordination' imports a willful disregard of express or implied directions, or such a defiant attitude as to be equivalent thereto. `Rebellious', `mutinous', and `disobedient' are often quoted as definitions or synonyms of `insubordinate'".
In State ex rel. Steele v. Board of Education, 252 Ala. 254, 40 So.2d 689, 695, the Court had this to say:
"The term `insubordination' is not defined in the statute, but unquestionably it includes the willful refusal of a teacher to obey the reasonable rules and regulations of his or her employing board of education."
As stated above, our Delaware statute does not define the words "willful and persistent insubordination", but after an examination of the cases, I am persuaded that a fair and reasonable definition is as follows:
"A constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority."
Necessity does not require that I recite any substantial part of the record, which is both long and conflicting. Suffice it to say, Superintendent Elder knew that appellant had not been teaching during the school year 1957-1958. There were several conversations and discussions at various places in the school between Superintendent Elder and the appellant relating to appellant's duties and teaching assignments. According to the record, however, there were no instructions to appellant that reasonably could be construed as an order to teach at any time, either express or implied.
Revisions were made in certain teaching schedules which were unsatisfactory to both Superintendent Elder and to appellant and there was the suggestion in the memorandum of February 10, 1958, the pertinent part of which stated "just one thing which seems to require improvement"  that appellant take over Parker's Ninth Grade Social Studies Class and another class, for a total of two classes. No stated time for doing so was suggested to appellant, and shortly after the February 10th memorandum, Superintendent Elder granted appellant permission to attend a conference of the National Association of Secondary School Principals in Indianapolis, Indiana, from which he returned on February 19, 1958.
Furthermore, on appellant's return from Indianapolis, he was directed by Superintendent Elder to conduct certain teacher tests in the school, and apparently nothing of any consequence was done or said about the teaching until after the tests had been concluded about April 15th.
On April 18th, Superintendent Elder addressed a registered letter to the appellant, the pertinent part of which is as follows: "Any reasons for your inability or unwillingness to carry out this assignment should now become a matter of record".
The letter of April 18th was not answered by appellant in writing, but its contents were discussed with Superintendent Elder on April 24th, at which time Superintendent Elder inquired whether appellant had started to teach, and appellant replied that it would be impractical with only twenty-seven school days remaining in the school year.
Even in the conversation of April 24th, Superintendent Elder did not order the appellant to teach.
At the Board meeting of April 22nd, two days before, Superintendent Elder had recommended that appellant's contract be renewed for another year. On April 25th, Superintendent Elder reversed himself and recommended that appellant's services be terminated as of June 30, 1958.
According to the record, Superintendent Elder admits that he never gave a direct order to the appellant to teach, and the record does not disclose, therefore, that the appellant disobeyed an order to teach.
*335 A fair reading of the record indicates that it was not until the April 24th meeting of the Board of Education of the Laurel Special School District that the decision was reached to charge the appellant with "willful and persistent insubordination".
Superintendent Elder testified as to the reasons for the charge as follows:
"First, his failure to answer the registered communication of April 18th.
"Second, his conversation with me of April 24th in which he stated that he was not teaching classes.
"Third, that it was impractical for him to do so."
From the standpoint of the school children, it is obvious that it would be impractical to change teachers with only twenty-seven school days remaining, when such change was not required by an emergency, such as death, automobile accident, or something of that nature. Even if Superintendent Elder had ordered the appellant to teach the remaining twenty-seven days, (and according to the record, Superintendent Elder admits that he did not give a direct order to the appellant to teach), it would manifestly have been unfair to the school children in the classes involved, and, therefore, under the circumstances, an unreasonable order. Failure to obey an unreasonable order would not sustain a charge of "insubordination". Kostanzer v. State ex rel. Ramsey, 205 Ind. 536, 187 N.E. 337.
If the decision of the Board of Education of the Laurel Special School District is supported by substantial evidence, the decision must be affirmed.
A leading Supreme Court case in point. LeTourneau v. Consolidated Fisheries Company, 4 Terry 540, 51 A.2d 862, 867, defines the Delaware law on the subject. Judge Speakman, in speaking for the Court said:
"In those cases, such as the instant one, in which the civil law procedure is followed, this Court ordinarily, upon appeal, will not disturb a finding on the facts by a lower court, in this instance The Industrial Accident Board, if it appears from the record that there was evidence to support the finding. The reason for the rule generally observed by reviewing courts, is that the trial court sees and hears the witnesses, and is, therefore, the better able to determine the credit and weight to be given their testimony."
Both counsel for the appellant and the appellee cite with approval the case of Morton v. Mooney, 97 Mont. 1, 33 P.2d 262, 265, which states the rules as follows:
"Substantial evidence is such as will convince reasonable men and on which such reasonable men may not reasonably differ as to whether it establishes the plaintiff's case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence."
The rule of law set forth in the Morton-Mooney case is entirely consistent with that enunciated in the LeTourneau-Consolidated Fisheries Company case, and, therefore, may be properly cited in support of the substantial evidence rule as laid down by the decisional law of this State.
As heretofore pointed out, there were conversations, discussions and suggestions; a memorandum and a letter. In no instance was there a direct order given to the appellant. The memorandum of February 10th merely contained a suggestion of improvement and the letter of April 18th suggested that if there were reasons for not teaching, that he make them a matter of record. Even if it could be considered that the inquiry on April 24th as to whether he had begun to teach was an implied order to teach, it was, in the opinion of the Court as previously pointed out, unreasonable for the reasons stated, and non-compliance therewith would not have constituted an insubordinate act.
*336 The appellant's status as a school principal and teacher was never too clearly defined, but it is apparent from the record that appellant could have been more cooperative in this regard. The record indicates that Superintendent Elder was aware of this fact. Under the circumstances, it was the duty of the Superintendent, as the duly constituted representative of the Laurel Board of Education, to properly clarify the appellant's status, and issue to him as occasions required, directions and orders in such language that there could be no doubt but that the failure to obey them would subject the appellant to a sustainable charge of "willful and persistent insubordination". This, according to the record, Superintendent Elder failed to do.
The burden in this case is upon the Board of Education, and that burden is accentuated by the fact that the said Board is not only the complainant and the prosecutor, but the judge as well. In such situations, the substantial evidence rule is to be zealously guarded and protected. In re Larsen, 17 N.J.Super. 564, 86 A.2d 430, 436.
Superior Court Judge William J. Brennan, Jr., now Associate Justice of the United States Supreme Court, had this to say, in the case of In re Larsen, supra:
"Are we precluded when applying the substantial evidence test from taking into account the implications of the merger of functions, merely because the Legislature has combined the functions in the Director? I think not. The measure of our duty is to set aside any administrative decision when we `cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, * * *'. `The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"
Decisions of administrative boards of such character require a careful study and consideration of the whole record, with all its inferences and implications, to make sure that there is substantial evidence or evidence on which "men may not reasonably differ" to support the Boards decision.
The Court well stated in State ex rel. Steele v. Board of Education of Fairfield, supra [252 Ala. 254, 40 So.2d 695], as follows:
"The anomaly in procedure which permits the board of education, an administrative body, to serve in the triple capacity of complainant, prosecutor, and judge makes it vitally necessary that in reviewing administrative decisions courts zealously examine the record with the view to protecting the fundamental rights of the parties * * *."
After a careful consideration of all the evidence, and applying the definition of "willful and persistent insubordination" adopted herein, I have reached the conclusion that the said Board of Education has not met the burden of proving its case against the appellant with such substantial evidence as will convince reasonable men and on which such men may not reasonably differ.
The action of the said Board of Education must, therefore, be reversed.
Necessity does not require that the Court pass upon appellant's reasons Nos. 2 and 3.
The decision of the Board of Education of Laurel Special School District is reversed and the Board of Education of said District is directed to fully reinstate appellant, and to pay to him all salary lost as a result of his temporary dismissal.
Order on presentation.