**Linda L. NEWMAN, Plaintiff,**

v.

**BOARD OF EDUCATION OF the MT. PLEASANT SCHOOL DISTRICT, Defendant.**

Court of Chancery of Delaware, New Castle.

Argued May 29, 1974.

Decided Sept. 9, 1974.

388

Sheldon N. Sandler, of Bader, Dorsey & Kreshtool, Wilmington, for plaintiff.

F. Alton Tybout, of Tybout, Redfearn § Schnee, Wilmington, for defendant.

BROWN, Vice Chancellor.

Plaintiff has brought this suit to compel performance by the defendant school board of the final step in the grievance procedure set forth in what is alleged to be a collective bargaining agreement between the school board and the Mount Pleasant Education Association, the recognized bargaining agent for the employees of the school district. Plaintiff was a nontenured teacher in the Mt. Pleasant district and a member of the bargaining unit at the time that this controversy was spawned. The defendant board has moved for summary judgment on the theory that the matter complained of by plaintiff does not fall within the scope of a grievance as contemplated by the terms of the agreement. The board questions whether or not the agreement itself is really a collective bargaining agreement, but, for the purpose of its mo-

tion, it concedes that it is bound by the grievance remedies set forth therein.

In the document, a "grievance" is rather loosely defined as

". . . a claim by an employee, employees, or the Association that the established policy of the Mount Pleasant Board of Education or the Mount Pleasant School District has been ignored, overlooked, misinterpreted, or misapplied, or that the right to fair treatment has been violated."

The grievance procedure includes four levels, the first two of which contemplate an informal discussion with the supervising principal and a hearing before the school superintendent or his designee. Level 3 provides for a hearing before the defendant school board and, finally, Level 4 provides that the aggrieved person, if still not satisfied, may request that his grievance be referred to a three-member Advisory Committee composed of one member named by the school board, one by the Association and a third member named by the other two. The function of this Advisory Committee is "to report recommendations for settlement within fifteen days."

The basis for this action is related to the teacher-tenure statutes, 14 Del.C. Ch. 14, which, among other things, provide that once a teacher has completed three years of service within the State, and two years with a particular school district, termination of his services by such school district can only be accomplished for certain specific reasons, and then only after proper notice and a hearing before the school board in the event the teacher demands one.

During the school year 1972–73, plaintiff was a nontenured teacher in her third year of teaching at the Mt. Pleasant School District. During her time of employment she received periodic evaluations as to her work, some of which were unfavorable in part. Finally, by a teacher evaluation report dated March 2, 1973, plaintiff's princi-

pal concluded that she had not shown enough improvement as a classroom teacher to warrant a recommendation of tenure. He therefore did not recommend her for tenure.

On March 16, plaintiff attempted to invoke Level 1 of the grievance procedure by seeking informal discussion. This was rejected on the grounds that there was no basis for a grievance to be filed. On March 29, plaintiff attempted to invoke Level 2 by writing to the district superintendent, but this request was also denied for the stated reason that non-recommendation for tenure was not a grievance matter. On April 19, plaintiff was formally notified that her teaching services would be terminated at the end of the school year. Specific reasons were given in her letter of termination.

Thereafter, plaintiff requested, and was given, a hearing before the defendant school board. Prior to the hearing the board made known its position that it did not consider non-recommendation for tenure to be subject to the grievance procedures. Nonetheless, the board proceeded to consider the matter on the merits and as a consequence it affirmed its previous determination not to rehire plaintiff. She then attempted to invoke Level 4 so as to convene the Advisory Committee, but the board refused to cooperate with this request. Thus this suit was instituted to compel it to do so.

Since the plaintiff had not acquired tenure as a teacher under Chapter 14, the strength of her complaint must lie in the rights accorded her by the agreement between the Education Association and the board. If she has a right to the relief she seeks, then it must be under the grievance procedure of the agreement. Thus, the sole question of the case is whether her dissatisfaction with the reasons relied upon by the board and its representatives in not recommending her for tenure constitutes a "grievance" under the agreement.

In seeking the answer to this question, it would seem that the starting point is the teacher-tenure statutes themselves. The purpose of Chapter 14 is to furnish protection to public school teachers by according them notice and reasons if their services are intended to be terminated, and the right to a hearing if they are unwilling to accept the intention to terminate as final. Board of Public Education in Wilmington v. Delaney, Del.Supr., 2 Storey 213, 155 A.2d 51 (1959). However, this protection is not provided to all teachers, but only those who have completed three years of service in the State and at least two years of service with the terminating school board. 14 Del.C. § 1403. Thus, new teachers are charged with the knowledge, that in effect, they are on a probationary status for their first three years of service and, at best, unless there is an intention to terminate during the school year (see Pierson v. De La Warr School District, Del.Ch., 282 A.2d 656 [1971]), they are only entitled to notice prior to May 1 that their contracts will not be renewed. 14 Del.C. § 1410. In short, the General Assembly has made it clear that the rights of a nontenured teacher are severely limited when compared with those of a tenured teacher, and his opportunity for continued employment is left to the judgment and discretion of the employing school board based upon its needs and its evaluation of his abilities. The natural corollary to this is that once a board employs for a third time a teacher who has completed three years of service in the State, there arises a presumption that the board is satisfied with his professional skills and, if the board thereafter desires to dismiss him, it has the burden of establishing one of the reasons enumerated by statute which justifies involuntary termination. Shockley v. Board of Education, Laurel Special School District, Del.Super., 1 Storey 537, 149 A.2d 331 (1959), reversed on other grounds, 2 Storey 277, 155 A.2d 323 (1959).

Thus, as I view it, the General Assembly has intended that a school board be prepared to defend its decision to sever a teacher to whom it has accorded tenure status, but (and absent constitutional infringements) it need not be called to account for its decision not to renew the contract of one who has not attained tenure. In the latter case, all it is required to do is give the nontenured teacher the reasonable notice prescribed by statute· so the teacher will have an adequate opportunity to seek employment elsewhere before the next school year.

Having reached this conclusion, it next becomes necessary to examine 14 Del.C. Ch. 40, the statutes which permit professional teaching employees to organize and engage in collective bargaining. The purpose of this chapter, as stated at 14 Del.C. § 4002, is to "promote the improvement of personnel management and employer-employee relationships within the public school system" and to recognize the right of the public employees to be represented by organizations of their choice "in their professional and employment relationships" with the various school boards. Both a school board and an exclusive negotiating representative for the employees have a duty, upon request, to meet with each other and negotiate with respect to three things, namely, salaries, employee benefits and working conditions. 14 Del.C. § 4008. The definition of these three terms as contained in 14 Del.C. § 4001 make it clear that the first two relate to compensation and the third to physical working conditions. And while 14 Del.C. § 4006(b) provides generally that a school board and a negotiating representative may also agree upon "other matters for discussion", Chapter 40 contains no reference or necessary inference to standards or procedures for hiring or dismissing employees.

This factor becomes significant in light of 14 Del.C. § 4013 which reads as follows:

"This chapter is intended to be in addition and supplementary to other laws of this State and shall not be construed to repeal any of the other provisions of this *title*. If there is a conflict between any *agreement arising under the provisions of this chapter and a provision arising under any other chapter of this title, the provision arising under any other chapter of the title shall prevail.*" (Emphasis added).

Therefore it seems to follow that if the General Assembly has indicated by Chapter 14 of Title 14 that the reason for not renewing a nontenured teacher is something that a school board does not have to discuss or justify, then it is not a proper subject for collective bargaining or discussion between a school board and an employee bargaining representative. Rather, it is an area where the General Assembly intended the discretion of the school board to remain free from contractual commitment.

This is not to say that a school board cannot, of its own volition, furnish a nontenured teacher with the reasons for non-renewal and also grant a hearing if requested. Some school districts do this as a matter of policy. It was done here, and, as a matter of policy it is a good one. ,It is not, however, the right of a nontenured teacher, and dissatisfaction on the part of the teacher cannot be transformed into a contractual right to a hearing before a school board, and more, under the guise of a grievance procedure designed to provide a quick and equitable solution to (according to its terms) "the inevitable problems that arise during the operation of any large organization".

In the language of the court in Van Gorder v. Matanuska-Susitna Borough School District, Alaska Supr., 513 P.2d 1094, 1096 (1973):

"The grievance procedure may be of value to a non-tenured teacher in at-

tempting to persuade the hiring authority that he should be retained. The process might on occasion bring forth evidence and argument by which the termination of the non-tenured teacher might be reconsidered. But any such results and action would, in our view, be a matter within the discretion of the hiring authority, and thereby a matter of grace rather than legal right."

See also Pinto v. Wynstra, N.Y.Supr., 43 Misc.2d 363, 250 N.Y.S.2d 1012 (1964);

Nassau Chap., Civ. Serv. Emp. Ass'n, Inc. v. Board of Ed., N.Y.Supr., 63 Misc.2d 49, 310 N.Y.S.2d 381 (1970).

■ I conclude that the reasons relied upon by the defendant school board in not renewing plaintiff's teaching contract, and her dissatisfaction with them, do not constitute a "grievance" under the terms of the agreement between the defendant and the Mount Pleasant Education Association. The motion of the defendant for summary judgment is granted. Order on notice.