Donna L. JOHNSON, Plaintiff,

v.

Dr. Wendell H. BUTLER, Mr. James W. Burks, Jr., Mrs. Hugh D. Dowdy, Mrs. Robert C. Hagan, Mr. Lewis M. Nelson, Jr. and Mr. Daniel E. Woolridge, Defendants.

Civ. A. No. 76–0081.

United States District Court, W. D. Virginia, Roanoke Division.

June 8, 1977.

532

David B. Hart, Smeltzer & Hart, Roanoke, Va., for plaintiff.

Charles B. Allen, Jr., Asst. City Atty., Joseph A. Matthews, Roanoke, Va., for defendants.

WILLIAMS, District Judge.

Petitioner, Donna L. Johnson, instituted this action under 42 U.S.C. § 1983, challenging the decision of the Roanoke City School Board not to renew her contract of employment as a teacher at Lucy Addison Junior High School for the 1976–1977 school year. Ms. Johnson alleges that she was dismissed from employment in retaliation for exercising her constitutionally protected right to freedom of speech. Jurisdiction is alleged pursuant to 28 U.S.C. § 1343 and the First and Fourteenth Amendments to the Constitution.

Ms. Johnson contends that her contract of employment was terminated because she complained to her principal, John B. Leffel, about her status as a "floating" teacher and subsequently filed a grievance if she were not given a permanent classroom assignment. Respondents deny the material allegations in her complaint and submit that she was dismissed because she was insubordinate and displayed a poor attitude.

This action was tried before a seven-member advisory jury on February 9 and 10, 1977. After hearing the evidence, the jury returned a verdict which found that Donna Johnson had established that her making a complaint to the school principal was a substantial or motivating factor in the decision of the School Board not to rehire her for the 1976–1977 contract year. The jury also found that the School Board had not shown that it would have reached the same decision in the absence of such complaint. There were no objections to the charge to the jury and the case is presently before this court for the rendition of findings of fact and conclusions of law.

The testimony at the trial in this case reveals that petitioner, an untenured teacher, commenced her employment at Lucy Addison in the 1973–1974 school year as an instructor of mathematics and science. She received satisfactory evaluations during her first two years of teaching and was given outstanding ratings in several categories. She earned particularly high marks for her ability to cooperate with other people. At the end of her second year, her principal, John B. Leffel, stated in an evaluation that "Miss Johnson is a satisfactory teacher and works hard at her teaching."

During the entire period of her employment, petitioner worked as a "floating" teacher, that is, she was not given a permanent classroom assignment. Although she did not complain about her room assignment during the 1973–1974 and 1974–1975 school years, petitioner testified that her status as a "floating" teacher was adversely affecting her ability to become an effective instructor and was contributing to classroom inefficiency. She explained that a teacher who does not have her own classroom must carry her materials from room to room. Inevitably, she stated, such a teacher will forget something in her haste to move onto the next class and will not have the material she needs to give to the students. Certain disciplinary problems also occur because some students always arrive in the classroom before the "floating" teacher can get there to start the day's lessons. Eventually, the students are the ones who suffer, petitioner stated.

When Ms. Johnson learned, in June, 1975, that she would not be given a permanent classroom assignment, she then requested a conference with Mr. Leffel. Her principal informed her that there was nothing he could do to change the assignment and, at a second conference, told her that he "didn't want to hear any more about it."

Because she was dissatisfied with this arrangement, petitioner wrote a letter to the Superintendent of Schools, Dr. M. D. Pack, in which she complained about her situation as a "floating" teacher. In a let-

ter dated August 27, 1975, Pack advised her to comply with established grievance procedures by first attempting to reconcile her differences with the principal on an informal basis. In late August or early September, 1975, Ms. Johnson met with Mr. Leffel to inform him of her intent to file a grievance. She said "This is an informal meeting in compliance with the grievance procedure. I feel very strongly that my floating position is affecting me as a teacher." She later placed her complaint to Mr. Leffel in writing but did not receive any response from him. On September 25, 1975, petitioner spoke with John Montgomery, the Assistant to the Superintendent, about her room assignment and decided at that time to withdraw her grievance and proceed informally. Montgomery advised petitioner to apply for a transfer if she were unable to secure a satisfactory teaching assignment.

During the month of October, 1975, respondent Leffel completed evaluation assessments of Donna Johnson's teaching performance. At no time did he criticize the petitioner's attitude or ability in any way. In March, 1976, however, Leffel informed her that he would recommend that her contract not be renewed for the 1976–1977 school year. On March 30, 1976, Dr. Pack advised petitioner by letter that, based upon the principal's recommendation, he also would ask the School Board not to renew her contract. The Board met on April 6, 1977 and voted by a 3 to 2 margin to uphold the recommendation of the superintendent. Ms. Johnson was not given any reasons for her dismissal at that time nor was she allowed to be present when Mr. Leffel testified. If Ms. Johnson's contract had been renewed for the school year 1976–1977, under Virginia State law, she would have become a tenured teacher, since she had taught for a period of three years in the Roanoke School System.

The official reasons later advanced by the School Board for petitioner's dismissal were that Ms. Johnson had been insubordinate and had displayed a poor attitude. They alleged that, during the 1975–1976 school year, she left her class unattended and departed from the school premises prior to the end of the contract day on at least one occasion. Respondents also state that Ms. Johnson once held her fourth period class six minutes after the bell rang and was rude to Mr. Leffel because she refused to talk to him about this incident.

Ms. Johnson emphatically denied that she had ever refused to talk to Mr. Leffel and testified that she held her class over for the purpose of disciplining the students for misbehavior. Petitioner also stated that she would occasionally leave class during the school day to obtain extra materials, but she never left for any reasons unrelated to school business nor would she leave without notifying the teacher on hall duty that she would have to be absent from the classroom. She would leave school premises prior to the end of the contract day only for the purpose of transporting students and cheerleaders to extra-curricular activities and only after notifying Mr. Leffel or some other responsible school official.

Other teachers testified at the trial in the case that it was sometimes necessary to leave class during the middle of the day to obtain materials or to quell a disturbance in the hall. Teachers were also permitted to leave school for the purpose of transporting students to sporting events.

The respondents deny that petitioner's complaint about her status as a floating teacher had anything to do with her dismissal. During the two years that Mr. Leffel served as principal, however, Donna Johnson was the only person who threatened to institute a grievance and the only person whom Mr. Leffel recommended for nonrenewal. Moreover, respondent Leffel admitted on the witness stand that he first took note of the petitioner's alleged insubordination and bad attitude after she had threatened to file a grievance and was not given a room. Leffel also stated that other teachers who left class briefly during the school day were not similarly marked for dismissal.

Prior to the meeting before the School Board, Mr. Leffel and superintendent Pack met privately to discuss Ms. Johnson's non-

renewal. Dr. Pack noted in his testimony that the principal was reluctant to discuss his complaints about petitioner in front of the other principals who had come to Dr. Pack's office to make personnel recommendations. When the School Board voted to consider the termination of Ms. Johnson's contract, it based its decision primarily on the testimony of Mr. Leffel and the recommendation of the superintendent.

## DISCUSSION OF THE LAW

It is a well-established principle that First Amendment Rights, applied in light of the special characteristics of the school environment, are available to teachers and students. "It can hardly be argued," Justice Fortas once wrote, "that . . . teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). Numerous court decisions have stressed the importance of the teaching profession in our democratic society and the necessity of protecting its personal, associational and academic liberty. Scholarship cannot flourish in an atmosphere of suspicion and distrust. It is essential that teachers be able to speak out freely without fear of retaliatory dismissal. *Sweezy v. New Hampshire*, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957); *Johnson v. Branch*, 364 F.2d 177 (4th Cir. 1966).

Thus it has been held that a teacher may not be dismissed from employment for exercising his or her legitimate First Amendment right to protest conditions existing within the school system. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The First Amendment is not restricted to public statements on issues of popular concern but has been extended to protect private conversations by public employees. *Hostrop v. Board of Junior College, Dist. No. 515*, 471 F.2d 488 (7th Cir. 1972); *Muller v. Conlisk*, 429 F.2d 901 (7th Cir. 1970); *Downs v. Conway School District*, 328 F.Supp. 338 (E.D.Ark.1971).

Under the rule of *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court held that an untenured teacher could set forth a violation of his First Amendment rights upon proof that his conduct was constitutionally protected and that his exercise of this right was a substantial or motivating factor in the School Board's decision not to rehire him. The teacher would be entitled to relief, however, only if the School Board were unable to show by a preponderance of the evidence that it would have reached the same decision in the absence of such protected conduct.

In accordance with the foregoing criteria the court in this case submitted two questions in special verdict form to the advisory jury as follows:

"1. Has the petitioner, Donna L. Johnson, established by a preponderance of the evidence that her making a complaint to the school principal, John B. Leffel, concerning her room assignment was a substantial or motivating factor in the School Board's decision not to rehire her for the 1976–77 school year?

2. If the answer to question 1 is 'yes', has the School Board shown by a preponderance of the evidence that it would have reached the same decision as to re-employment of Donna L. Johnson in the absence of her complaint concerning her room assignment?"

The court is convinced that Donna Johnson engaged in conduct protected by the First Amendment in complaining to her principal about her room assignment. She sincerely believed that her status as a floating teacher contributed to classroom inefficiency and was adversely affecting her as a teacher. The court finds that the right of a teacher to voice concerns about conditions which interfere with the education of her students falls squarely within the protections afforded by the Constitution. *See Downs v. Conway School District, supra.* The recognition that teachers, because of

their unique position within the school system, should be free to criticize and evaluate was well stated by Mr. Montgomery in his September 25, 1975 letter to petitioner. He welcomed her suggestions about floater problems and stated that her proposals "would be considered as a part of the general efforts of the Superintendent to upgrade the school system and to make conditions better for all students and professional staff members." The evidence is undisputed that Ms. Johnson accepted the recommendations of Mr. Montgomery and immediately dropped her grievance, and considered the entire matter ended until notified of her recommended dismissal. That Donna Johnson complained to her principal about her assignment as a floating teacher and threatened to institute a grievance to secure a permanent room is not a permissible basis for terminating her employment.

▆ The jury empaneled in this case found that the complaint of Donna Johnson to her principal about her room assignment was a substantial or motivating factor in the School Board's decision not to rehire her. The jury also found that the Board would not have reached the same decision in the absence of her complaint. While the court is in no way bound by the jury's verdict, and has independently reviewed the record in detail, the court finds the jury's decision correct as to both questions, and that Ms. Johnson's contract was not renewed solely because she complained about her room assignment and filed a grievance. Prior to the time that she made her complaint to Mr. Leffel, Ms. Johnson received consistently favorable ratings as a teacher. Before she complained about her assignment, Mr. Leffel himself had stated in an evaluation that petitioner was a satisfactory teacher who worked hard at her profession. At no time during the October 1975 evaluations did the principal criticize Ms. Johnson's work or her attitude, nor did he ever mention to petitioner that she had better improve or he would be compelled to recommend nonrenewal. Instead, the evidence shows that subsequent to Ms. Johnson's complaint, her principal began scrutinizing her activities and collecting evidence of alleged infractions of school policy. Leffel admitted on the stand that he first took notice of the violations by Ms. Johnson after she threatened to file a grievance and that, to his knowledge, she had not engaged in any misconduct prior to that time. During Leffel's two year tenure as principal at Lucy Addison Junior High, Donna Johnson was the only individual to complain and the only person whom Leffel ever recommended for nonrenewal. While Ms. Johnson gave as her reason for filing the complaint that younger teachers were given permanent room assignments, it is not important whether her complaint was valid or not, the sole question is whether the complaint was the root cause of her nonrenewal.

▆ Based on this evidence, the court concludes that Mr. Leffel cited petitioner's alleged insubordination and poor attitude as a mere pretext to obtain her dismissal for exercising her First Amendment rights. Because the School Board rested its decision on the testimony of Mr. Leffel, the court finds that petitioner's complaint to her principal was a substantial, motivating factor in the decision to terminate her contract. The court further rules that the Board would not have reached the same result in the absence of such complaint.

▆ James W. Burks, Jr., a member of the School Board who was in the minority of the 3–2 vote for nonrenewal, testified that in his opinion the fact that Ms. Johnson complained about her classroom led to conflicts between her and the principal and caused the principal not to recommend her to be renewed. Mrs. Marion Anderson Dowdy, another School Board member, who voted in the majority, testified as follows: "What did concern me was that she seemed unwilling to accept her assignment. Now a part of the contract that all teachers sign states that you will accept any assignment given you, and that was what concerned me. It wasn't the fact that she complained, but that she seemed unwilling to accept her assignment at all." On cross-examination,

she stated, "I said she seemed unwilling to accept her assignment. She did attempt it but she wasn't willingly doing it, I don't think." A thorough reading of all of Mrs. Dowdy's testimony reveals that she made a subjective conclusion that Ms. Johnson was "unwilling" to accept her assignment and this was the reason she voted for nonrenewal. While Mrs. Dowdy's conclusion is not in accord with the facts in this case, considering that Ms. Johnson worked for three years as a floating teacher, and when she filed her grievance concerning her assignment, dropped it at the suggestion of Mr. Montgomery, even if we accept Mrs. Dowdy's conclusion, the only expression of "unwillingness" is the making of the complaint and the filing of the grievance. Therefore, whether we accept the testimony of Mr. Burks or Mrs. Dowdy, the conclusion is the same, to-wit, that Ms. Johnson's contract was not renewed because she complained and filed a grievance. The court finds no evidence of Ms. Johnson's insubordination or disrespectfulness and there is no indication that she was derelict in performing her duties as a teacher. The court finds as a fact that she left class only for legitimate reasons related to school business and that she was not rude to Mr. Leffel on any occasion in question. Even assuming that some of the allegations were true, the minor infractions advanced as reasons for dismissing a teacher of Ms. Johnson's caliber are neither individually nor collectively such as to justify nonrenewal of her contract. *See, Johnson v. Branch, supra,* at p. 182.

Finally, the court emphasizes that at best one of the Board members who voted for nonrenewal testified that he would have changed his vote if he were aware that Mr. Leffel sought dismissal simply because Ms. Johnson had complained to him about her assignment. The court holds that Mr. Leffel recommended that her contract not be renewed for this reason only and that the School Board would not, therefore, have reached the same result in the absence of such complaint.

Accordingly, final judgment will be entered granting the plaintiff reinstatement with tenure in the Roanoke City School System, and back pay from the time of termination of her contract until reinstatement, less whatever sums were earned by her during that period and whatever unemployment compensation was received. An order will be entered in accordance with this opinion.