John ELWELL, Plaintiff and Appellant,

v.

BOARD OF EDUCATION OF PARK CITY, Park City School District, and Richard L. Goodworth, Superintendent, Defendants and Respondents.

No. 16370.

Supreme Court of Utah.

Feb. 19, 1981.

15. See, e. g., *Hillyard v. Utah By-Products Co.,* *supra,* footnote 5, and *Anderson v. Parson Red-E-Mix Paving Co., supra,* footnote 9.

Kathryn Collard, Salt Lake City, for plaintiff and appellant.

Oscar W. McConkie, Jr., Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiff John Elwell appeals from the judgment of the district court which rejected his contention that he had been unlawfully terminated as principal of the Marsac Elementary School in the Park City School District. He contends that he had been denied due process of law [1] and the safeguards assured by the Utah Orderly School Termination Procedures Act.[2]

1. Amend. XIV, Constitution of the United States, Art. I, Sec. 7, Constitution of the State of Utah.

2. Sections 53–51–1, et seq., U.C.A.1953.

In preface to our examination of the facts and the contentions of the respective parties, we note our agreement with certain principles applicable thereto.

It is not to be doubted that a person threatened with deprivation of his employment (which is recognized as a substantial and important right)[3] is entitled to be treated with fundamental fairness. This does not mean that the school board is necessarily bound to accord its employees all of the requirements which due process of law accords one accused of crime. But the notion of fundamental fairness entails that he be given reasonable and timely notice of the proposed action; be informed of the basis thereof with sufficient definiteness and clarity that he can understand and prepare to meet them; have the aid of counsel if he so desires; have the opportunity to confront and cross-examine adverse witnesses; be allowed to offer evidence in his defense; and be given a statement by the board as to the basis of their decision.[4]

Mr. Elwell was initially employed by the Park City School District in 1972 as principal of the Marsac Elementary School. He served in that position until the school board declined to renew his contract for the 1977–78 school year. The troubles which eventuated in that action date back to the conclusion of the 1974–75 school year in which the superintendent, defendant Richard L. Goodworth, gave plaintiff a letter calling attention to the fact that, though he recognized the right to differences of opinion, that should not stand between people in a working relationship; that such differences should not be aired in public; and warned the plaintiff against doing so.

Sparing extended detail, it appears that there continued to be friction between the plaintiff Elwell and superintendent Goodworth. This resulted in the superintendent submitting to Mr. Elwell what is called a "negative evaluation" on January 31, 1977, together with a notice that he was recommending that Mr. Elwell's contract should not be renewed for the next school year, 1977–78.

After delivery of that letter, the parties had what is referred to as a series of "remedial meetings," which did not result in resolving the problems between them. Subsequently, on March 7, 1977, Mr. Goodworth sent a letter to the plaintiff which set out the allegations of insubordination and failure of cooperation and contained the significant statement:

Please be advised that the Park City School District will not offer you a contract for the school year 1977–78. As the Superintendent of schools, I exercise my prerogative in sending you this notice as I think is appropriate under Board policy and State law.

The plaintiff was also informed that he could appeal that decision to the Park City Board of Education.

Upon receipt of the letter of March 7, 1977, the plaintiff requested and was granted an informal hearing before the board concerning his termination. As a result of that hearing, the board did not take any action other than as indicated in the letter. Plaintiff Elwell then requested a formal hearing as to his termination. Because of the unavailability of plaintiff's counsel, he requested and was granted several delays in hearing dates, and a formal hearing was finally convened on May 24, 1977. On that date, Mr. Elwell and his counsel were furnished a statement of the allegations; and upon his request, the board granted a further continuance to allow him an opportunity to examine and meet the charges.

On May 31, there was a plenary hearing before the full board in which the interested parties, including plaintiff Elwell and his counsel, were present. Witnesses were sworn, examined and cross-examined and documentary evidence was received. Upon the completion of the hearing, the board indicated that the official vote and decision

---

3. See *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

4. Cf. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

would be made in an open meeting on June 3, 1977. In the meeting on that date, the board voted four to one against renewing Mr. Elwell's contract. A letter was prepared and furnished to Mr. Elwell, which set forth the views of the majority of the board consistent with the charges against Mr. Elwell and justifying the refusal to renew his contract.

Pursuant to the filing of this action in the district court, there was a plenary trial. Upon an examination of the allegations and the evidence, Judge Dean E. Conder made what impresses us as a fair and careful analysis thereof. He set forth in his memorandum decision the steps taken in giving plaintiff full and timely notice of the charges and ample opportunity to respond and defend against them. We quote from his memorandum in certain pertinent parts:

This court is also concerned about whether or not Mr. Elwell was given "procedural due process" as required by the law. In 1973 the Utah Legislature adopted the "Utah Orderly School Termination Procedures Act."

\* \* \* \* \* \*

In 1974 the Board adopted this Act as its "procedures"....

The contract of the plaintiff provided in part: "7. This contract may be terminated or its renewal refused by the Board for misconduct, insubordination, for persistent violations of the rules and regulations of the Board, or instructions of the Superintendent."

The law itself sets forth the minimum criteria for determining the orderly procedure. This court finds that all of those criteria were met in this case.

The memorandum decision then recites the various steps in the procedure delineated above and concludes that:

All of these steps are in compliance with the Utah Orderly School Termination Procedures Act. On June 4, 1977,

the Board voted 4 to 1 not to renew Mr. Elwell's contract, and by letter dated the same day outlined its reasons. The court finds that the Board was fair and impartial in its determinations.

■■■ It should be here noted that the management, supervision and determinations of policy are the prerogative and the responsibility of the school officials; and that the courts should be reluctant to enter therein;[5] and indeed should not do so unless it is shown that the complainant was in some manner deprived of due process of law, or that the action of the board was so entirely without justification that it must be deemed capricious and arbitrary.[6] The district court was not persuaded that the school board had transgressed those principles. Indulging the presumptions of verity to the findings and judgment of the district court to which they are entitled, we see no reason to disagree with its resolution of this controversy.

Affirmed. Costs to defendants (respondents).

HALL, J., concurs.

STEWART, J., concurs in the result.

WILKINS, J., concurred in the result before his resignation.

MAUGHAN, Chief Justice (dissenting):

For the following reasons, I dissent.

In the majority's outline of the requirements of due process it states that the notion of fundamental fairness entails the defendant be given a statement by the Board as to the basis of their decision. In point of fact the Board is statutorily required under 53–51–5(9) to provide:

"Written notice of suspension or final termination including findings of fact made by the board when such suspension or termination is for cause."

This requirement of written findings of fact is more than a mere procedural techni-

---

5. See statement in *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

6. *Brough v. Board of Education*, 23 Utah 2d 353, 463 P.2d 567 (1970) and authorities therein cited; *Board of Education v. Lammle*, 122 Ariz. 522, 596 P.2d 48 (1979).

cality. Rather the requirement stems from the administrative body's role as the exclusive finder of fact and imposes upon the Board the duty to make findings of basic facts upon all the material issues in the proceeding and upon which its finding of ultimate fact must be based.[1]

A principal reason for requiring findings of basic facts made by the administrative body is to assure more careful administrative consideration and protect against careless and arbitrary action.[2] While no sure method of insuring against arbitrary decisions has yet been found, the nearest approach to it is to require that basic findings of fact be made by the administrative hearing body.[3] Thus, the statutory requirement of explicit findings of fact made by the Board helps to insure reasoned decision making based upon the evidence presented at the hearing and provides a statutory safeguard against arbitrary and capricious decisions based on ex parte evidence.[4]

The administrative body's decision following a quasi-judicial proceeding must rest solely on the legal rules and evidence adduced at the hearing. Reliance on extraneous evidence as grounds for the denial of a legitimate expectation of continued employment deprives the adversely affected individual of his constitutionally protected rights to due process of law and a fair hearing.[5] The requirement that the administrative body formulate sufficiently detailed findings of fact is specifically aimed at eliminating this type of constitutional deprivation.[6] Thus, the legislative mandate of 53–51–5(9), that written notice of final termination include findings of fact *made by the Board*, invokes a procedural safeguard against arbitrary decision making by the administrative body.[7]

In the present case this procedural safeguard is eviscerated by the majority's acceptance of "[a] letter ... prepared and furnished to Mr. Elwell ...," as fulfilling the statutory requirement of written findings of fact made by the Board. This letter which was dated June 4, 1977, and signed by the President of the Park City Board of Education, Gary D. Boyle, stated in pertinent part:

"The said Board found that you were insubordinate and, in lesser degree, incompetent. Its conclusion was based on the following findings of fact:

"1. When requested to work with the superintendent in an attempt to reconstruct shortcomings you were

1. An ultimate finding is a conclusion of law or at least the determination of a mixed question of law and fact. It is subject to judicial review and, on such review, the Court may substitute its judgment for that of the administrative body. See *Cities Service Gas Co. v. State Corporation Commission*, 201 Kan. 223, 440 P.2d 660 (1968). Ultimate findings rest on basic findings of primary, evidentiary or circumstantial facts. The basic findings are more detailed than the ultimate finding, but less detailed than a summary of the evidence. See 2 Davis, Administrative Law Treatise, Sec. 16.06, pp. 449, 451 (1958).

2. See *Lucas v. Board of Education of Fort Bragg Unified School District*, 13 Cal.3d 674, 119 Cal.Rptr. 462, 532 P.2d 110, 114 (1974). Other reasons for requiring findings of basic facts include: (1) to facilitate judicial review; (2) avoid judicial usurpation of administrative function; (3) assist the parties in planning their case for rehearing and judicial review; and (4) keep such agencies within their jurisdiction as prescribed by the legislature. See *Kansas Public Service Company, Inc. v. State Corporation Comm.*, 199 Kan. 736, 433 P.2d 572 (1967), 2

Davis, Administrative Law Treaties, Sec. 16.05, p. 444 (1958).

3. *Cities Service Gas Company v. State Corporation Commission,* supra note 1, at 669.

4. See *Staton v. Mayes*, 552 F.2d 908, (10th Cir. 1977); *Morey v. School Board of Independent School District No. 492*, 271 Minn. 445, 136 N.W.2d 105 (1965); See also *Application of Hawaii Electric Light Co., Inc.*, 60 Hawaii 625, 594 P.2d 612, 623 (1979).

5. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

6. See *State ex rel. Ball v. McPhee*, 6 Wis.2d 190, 94 N.W.2d 711 (1959).

7. Cf. *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring) ("It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law."

asked not to make public notice of the reconstruction work. You violated this request and evidenced a sense of rebellion against the administration.

"2. You have wilfully failed and refused to follow the policies of the District Board of Education and its executive officer, Superintendent of Schools.

"3. You have wilfully refused to comply with requests of the Superintendent in matters pertaining to school administration.

"4. You have admitted that you have not supported the Board of Education in its policies.

"5. You have authorized programs that were in opposition to the directives and programs as set forth by the Superintendent.

"6. You have failed and refused to work with the Superintendent in attempting to overcome the educational shortcomings as set forth in the Superintendent's letter to you of 31 January, 1977. Your evaluation therein has not been changed. All of the adverse evaluations as set forth in that letter remain unresolved and reasons for not tendering a contract for the coming year."

The majority states this letter "set forth the views of the majority of the board consistent with the charges against Mr. Elwell . . . ." In actuality the findings of fact recited in the letter of June 4 merely restate the charges lodged against Mr. Elwell in Superintendent Goodworth's letter of March 7, 1977.

Although the June 4th letter was signed by the President of the Park City School Board, Gary D. Boyle, he testified at trial that this statement of findings of fact was composed by Superintendent Goodworth and his counsel without any reference to written findings of fact actually rendered by the hearing board. In fact, Gary Boyle testified that the Board of Education never made any findings of either basic or ultimate fact in regard to the charges against Mr. Elwell. He further testified that although he signed the letter he had no role in drafting the alleged findings and the letter as drafted was never presented to the Board for review or ratification of its contents. The fact that the Board made no findings of fact and neither reviewed nor ratified the letter represented as containing its findings was affirmed at the trial by all the members of the Board who voted to terminate Mr. Elwell's contract.

Thus, in the present case, any legitimate announcement of the Board's findings of basic or ultimate fact was rendered impossible by the admitted failure of the hearing body to make any finding. The letter of June 4, which merely represents a self-serving reiteration of the charges filed against Mr. Elwell by Superintendent Goodworth, therefore has been accepted by the majority of this Court in direct contravention of the statutory mandate of 53–51–5(9), that written findings of fact be made by the Board.

The vital importance of strict adherence to this statutory mandate cannot be ignored. In the present case, the absence of written findings made by the Board resulted in an unstructured decision making procedure where ex parte evidence and other inappropriate information was relied upon by the individual Board members in reaching their decision to terminate Mr. Elwell's contract.[8] Specifically, Faye Dearden, who as a member of the Board voted to terminate Mr. Elwell's contract, testified at the District Court trial that some of the evidence relied upon by her as supporting non-renewal was not introduced at the hearing. Similarly, Ann Prince, who also voted against renewal, related at trial inappropriate reasons grounded on ex parte evidence

---

**8.** The proper procedure for reaching an administrative decision includes at least four steps: (1) evidence must be taken and weighed, both as to its accuracy and credibility; (2) from attentive consideration of this evidence a determination of facts of a basic or underlying nature must be reached; (3) from these basic facts the ultimate facts, usually in the language of the statute, are to be inferred, or not, as the case may be; (4) from this finding the decision will follow by the application of the statutory criterion. See *Kansas Public Service Company v. State Corporation Commission*, supra note 2, at 581.

as influencing their decisions not to renew the plaintiff's contract.[9]

This reliance on extraneous evidence as grounds for the denial of a legitimate expectation of continuing employment not only abrogates the appropriate function of the administrative proceeding, but also deprives the adversely affected individual of his constitutional rights to due process and a fair hearing. At a minimum the concepts of fundamental fairness and due process demand an individual subject to quasi-judicial administrative action be provided an opportunity to rebut the evidence relied upon by the decision-maker in reaching its final decision. Thus, administrative bodies are required to base their decisions exclusively on evidence presented at the hearing which relates to issues previously communicated to the individual by prehearing notice. In this way the individual is insured the equivalent of his day in court even though the tribunal is an administrative agency.

The only evidence an appellate court has of this type of reasoned decision making based on the facts received at the hearing is the administrative body's statement of its findings of fact.

In the present case the Park City School Board employed Darnell Long to conduct the evidentiary hearing in the matter of the non-renewal of Mr. Elwell's contract of employment. The Board also employed a neutral attorney, to counsel the Board at the hearing. However, following the hearing these individuals did not participate in the formulation of findings of fact made by the Board. Instead, a letter alleging to represent those findings was drafted by Superintendent Goodworth and his attorney. Although signed by Gary D. Boyle, this letter and its findings were never ratified by the Board as its findings of fact. In fact, the Board actually failed to reach the ultimate finding of insubordination and at no time did it compose findings of basic fact. Rather, the individual members merely voted at the June 3rd meeting not to renew Mr. Elwell's employment contract.

However, the majority overlooks this admitted insufficiency in the administrative procedure and accepts Superintendent Goodworth's self-serving letter of June 4 as fulfilling the statutory requirement of 53–51–5(9). This letter cannot evidence findings of fact which were never made by the Board and cannot be condoned as fulfilling the statutory requirement. Because Mr. Elwell was denied his statutory right to that procedural safeguard and his constitutionally protected right to due process and a fair hearing, I cannot agree with the majority nor join in this emasculation of the statutory requirement. At a minimum, the matter should be remanded for a new hearing in which the statutory requirements of 53–51–5(9) will be respected and followed.[10]

Another problem I have with the majority's position is its failure to review the substance of the administrative decision. On appeal the plaintiff raises several issues relating to the substantive basis of the the Board's decision. Mr. Elwell contends specifically that several of the charges lodged against him, and the principal motivation for his termination involve constitutionally protected activities. He also argues the remaining charges and evidence presented represent activities which are so trivial and remote that they cannot constitute substantive grounds for termination.

While recognizing that Superintendent Goodworth's principal motivation for seeking Mr. Elwell's termination was Mr. Elwell's differences of opinion and the airing of those in public, the majority opinion totally ignores the substantive issues present-

9. For example, Ann Prince testified that one of the reasons she voted to terminate the plaintiff's contract was the fact he did not support his faculty. However, she stated this was not one of the listed charges and did not constitute insubordination. After stating she didn't think it advisable to have Mr. Elwell handle the school again for another year, Faye Dearden explained that the impact of these proceedings on the children, which was not brought out as evidence at the hearing, was a major reason for her termination vote.

10. *Kudasik v. Board of Directors, Port Allegeny School District*, 45 Pa.Cmwlth. 254, 405 A.2d 1320, 1323 (1979).

ed by the plaintiff. Notwithstanding the majority's reference to indulging in presumptions of verity as to the findings and judgment of the District Court, this Court has a responsibility to undertake effective and responsible judicial review of administrative actions which come before it. Effective review necessitates more than the mere perfunctory acceptance of the District Court's conclusions.

In reviewing the quasi-judicial determinations of administrative bodies, the reviewing court must: (a) determine whether the evidence received at the hearing substantially supports the administrative tribunal's findings of basic facts; (b) determine whether the basic facts found and supported by substantive evidence reasonably support the inference of ultimate fact made by the administrative body; and (c) decide whether the tribunal correctly applied the law to the ultimate facts reasonably inferred from the basic facts.[11] Therefore, on appeal we must determine whether the agency's decision is supported by substantive evidence [12] on factual matters and by a rational basis concerning questions of law and the application of law to fact.[13]

Effective application of this standard in the present case is totally eliminated by the Board's failure to render findings of basic and ultimate fact. While the letter of June 4th sets out alleged findings of fact this instrument which is but a reiteration of the charges lodged against Elwell does not re-cite the actual factual determinations of the hearing Board. As I explained earlier the testimony presented to the District Court reveals no findings of fact were made by the Board. Without these required findings there exists no rational basis for judicial review of the Board's decision.[14] The District Court should not conduct a trial de novo on this matter and this Court cannot weigh the evidence, make its own basic findings and infer its own findings of ultimate fact.[15] Because the making of findings of fact is the obligation of the administrative body and is not a function to be performed by the appellate court in the first instance, adequate findings must be made by the Board before this Court can effectively review the administrative action.[16]

However, because the majority accepts the letter of June 4th as fulfilling the statutory requirement of written findings of fact, its failure to address the substantive issues and their accompanying merit must not go unnoticed.

Several of the charges found in the June 4th letter relate to actions of the plaintiff which involve his constitutionally protected right to freedom of expression. Non-renewal of a legitimate expectation of continued employment cannot be based upon an individual's exercise of constitutionally protected First Amendment freedoms.[17]

The question of whether speech of a government employee is constitutionally protected expression necessarily entails

---

11. *Wright v. State Insurance Commissioner*, 252 Or. 283, 449 P.2d 419 (1969).

12. Substantive evidence has been defined in this context as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting from *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

13. *Harborlite Corp. v. Interstate Commerce Commission*, 613 F.2d 1088, 1093 (D.C.Cir. 1979).

14. *Larsen v. Oil & Gas Conservation Commission, Wyoming*, Wyo., 569 P.2d 87, 90 (1977).

15. *Wright v. State Insurance Commission*, supra note 11, 252 Or. 283, 449 P.2d at 423;

*Arkansas Savings and Loan Association Board v. Central Arkansas Savings and Loan Association*, 256 Ark. 846, 510 S.W.2d 872 (1974).

16. This concept was aptly presented by Judge Murphy of the Minnesota Supreme Court in *Morey v. School Board of Independent School District No. 492*, supra note 4, 271 Minn. 369, 136 N.W.2d at 108, when he explained: "We must first know what the decision means before we can undertake the task of attempting to winnow the wheat from the chaff to find out if the conclusions of the administrative body are without support in the evidence and examine whether its actions are right or wrong."

17. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

striking "a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees."[18] In the present case the interest of the State corresponds to the education of its pupils which is the primary objective of the school district.

Rather than contradicting this interest the free expression of educational approaches and responsible criticism of school programs by employees of the school district facilitates the effective performance of public education. As long as the employee does not violate established policies of the school district responsible statements concerning those policies should not be curtailed and represent constitutionally protected speech.[19]

Therefore, Elwell's statements and positions concerning the middle school concept cannot be relied upon by the Board to support his termination.[20] However, this was specifically listed in Goodworth's letter of March 7, 1977, under charge number 2, as one example of Elwell's wilful failure and refusal to follow the policies of the Board. Similarly charge number 4, that Elwell admitted that he had not supported Board policies cannot be relied upon as cause for termination.

Likewise, the fact the remedial meetings between Mr. Elwell and Superintendent Goodworth were made public does not interfere materially with the efficiency of the public services performed by the school system. The interests of Mr. Elwell and the public's right to be informed, outweigh the relatively insignificant effect this disclosure would have on the already inconsonant relationship between the principal and the superintendent.[21] Therefore, notwithstanding the factual questions surrounding the disclosure of this information, Elwell's alleged disclosure of the fact that remedial meetings were in progress falls within the constitutional protections of free speech and cannot be relied upon as a basis for termination.[22]

Because constitutionally protected activities cannot constitute cause for termination, the ultimate findings of insubordination must be supported by the remaining charges presented by the March 7th and June 4th letters and evidence in support thereof. In the present case, the letter of June 4th indicates that the cause for Elwell's termination was insubordination. Thus, before we can decide whether the basic facts are supported by substantive evidence and whether those basic facts reasonably support the inferred ultimate fact of insubordination that term must be defined.

---

18. See *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 284, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977), (quoting from *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

19. See *Mt. Healthy City Board of Education v. Doyle*, supra note 18, 429 U.S. at 284, 97 S.Ct. at 574; *Bernasconi v. Tampa Elementary School District No. 3*, 548 F.2d 857 (9th Cir. 1977).

20. See *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, Wyo, 549 P.2d 1161, 1174 (1976) ("Cause may not be found in a constitutionally-protected reason.")

21. While co-worker harmony is a factor to consider in determining the breadth of constitutional protections to expression in this area, that factor must be viewed in relation to the content of the employee's statements and the particular relationship in question. See *Pickering v. Board of Education*, supra note 18, 391

U.S. at 570, 88 S.Ct. at 1735. The mere act of expression cannot be repressed by the dictates of the employee's supervisor. As stated by the Wyoming Supreme Court in *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, supra note 20, 549 P.2d at 1176: "... public school teachers may not be constitutionally compelled, as a condition of retaining their employment, to relinquish the First Amendment rights that they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of public schools in which they work...."

22. Although the notice may have been released in contradiction to Superintendent Goodworth's request, he has no more authority than the school system itself to restrict Elwell's constitutionally protected right of free expression, and his request to curtail that expression must be seen as unreasonable and unauthorized.

Insubordination as grounds for the termination of an employment contract of a tenured educator has been defined as: "... 'constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority.' "[23]

While certain jurisdictions have held that insubordination includes a wilful refusal of a teacher to obey reasonable rules and regulations the better reasoned decisions place emphasis on the presence of a persistent course of wilful defiance.[24] Therefore, in the latter jurisdictions to constitute cause for termination, it must be established that the teacher embarked upon a persistent course of wilful defiance.[25]

Applying this definition, the basic facts found by the Board would have to establish a persistent course of wilful defiance by Elwell before they could reasonably support the ultimate fact of insubordination. The evidence presented at the hearing in question does not substantially support the basic facts required to establish a persistent course of defiance. Therefore, no substantive evidence has been presented which can reasonably support the ultimate finding of insubordination.[26] While the evidence relates a variety of intermittent trivial acts in variance with requests of the superintendent it does not detail any persistent defiance by Elwell. The intermittent infractions presented at the hearing are simply too insignificant to justify the ultimate sanction of non-renewal.

Also, the alleged findings of basic fact outlined in the June 4th letter do not reasonably support an inference of insubordination. Because that inference does not follow reasonably from the alleged basic facts presented after the hearing in the June 4 letter, the Board's decision is arbitrary and capricious.[27]

Therefore, appropriate substantive review of the evidence in support of the charges found in the June 4th letter would require the decision of the Park City School Board be overturned and the plaintiff reinstated to his previous position of employment. The majority's failure to undertake any substantive review of this decision, while accepting the letter of June 4th as the Board's findings of fact, results in what I believe is a critical emasculation of the Utah Orderly Termination Procedures Act and the perpetration of an injustice.

**23.** *Ray v. Minneapolis Board of Education, Special School District No. 1*, 295 Minn. 13, 202 N.W.2d 375, 378 (1972); (quoting from *Shockley v. Board of Education*, 51 Del. 537, 149 A.2d 331, 334, reversed on other grounds, 52 Del. 237, 155 A.2d 323 (1959)). Thus, Elwell's alleged refusal to comply with Goodworth's request not to disclose the reconstruction work cannot support a finding of insubordination because the request was neither reasonable in nature nor issued with proper authority.

**24.** *Board of Trustees of Weston County School District No. 1 v. Holso*, Wyo., 584 P.2d 1009 (1978).

**25.** Id. at 1016.

**26.** See *Gwathmey v. P. T. Atkinson*, 447 F.Supp. 1113 (E.D.Vir.1976). See also *Johnson v. Branch*, 364 F.2d 177 (4th Cir. 1966); *Johnson v. Butler*, 433 F.Supp. 531 (W.D.Vir.1977); *Board of Trustees, etc. v. Holso*, supra note 24, 584 P.2d at 1016.

**27.** *Bogart v. Unified School District, No. 298 of Lincoln County*, 432 F.Supp. 895 (D.Kan.1977). *Kruse v. Board of Directors of Lamoni Community School District*, Iowa, 231 N.W.2d 626 (1975).