DAMON BETHEL, Plaintiff Below, Appellant,
v.
BOARD OF EDUCATION OF THE CAPITAL SCHOOL DISTRICT, Defendant Below, Appellee.
No. 464, 2009.
Supreme Court of Delaware.
Submitted: November 25, 2009.
Decided: December 4, 2009.
Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

ORDER
JACK B. JACOBS, Justice.
This 4th day of December 2009, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:
1. Damon Bethel ("Bethel") appeals from a Superior Court order affirming the Board of Education's ("Board") decision to terminate Bethel as a teacher with the Capital School District ("School District"). Bethel contends that the Board erred: (a) by depriving him of a fair and meaningful process, and (b) by relying on insufficient evidence to find immorality and misconduct in office pursuant to 14 Del. C. § 1420. Because the Superior Court correctly held that the Board's decision was supported by substantial evidence and there was no error of law, we affirm.
2. The School District employed Bethel as a special education teacher at Dover High School. On May 30, 2007, Bethel received notice from the School District of its intent to terminate him, pursuant to 14 Del. C. § 1420, on the grounds of immorality and misconduct in office.[1] In response, Bethel requested and received a closed pre-termination hearing.[2] After the hearing, held on June 26, 2008, the Hearing Officer issued a report on July 17, 2008 recommending Bethel's termination.
3. The report considered four events of alleged misconduct and/or immorality by Bethel: (1) an incident on April 21, 2007 involving the student Nicolai Tugultschinow ("Tugultschinow"); (2) improper grading practices; (3) using inappropriate language at a football game; and (4) sleeping during the work day. Because the Hearing Officer did not rely on the alleged sleeping incident in reaching his conclusion, the facts relating to that particular allegation of misconduct need not be recounted.
4. After attending a church meeting in Dover on Friday, April 20, 2007, Bethel was supposed to meet a friend for a transportation home to Smyrna. Because the friend failed to appear,[3] Bethel walked to a nearby Sunoco station on Route 13 in Dover, and attempted to place a collect call to his parents. Sometime after midnight, Bethel saw one of his students, Tugultschinow, at the Sunoco station and asked him for a ride to the Wesley College area in downtown Dover.
5. Bethel claims that he asked Tugultschinow for a ride to Wesley College so that he could find a taxi cab or other ride to his home in Smyrna. The Hearing Officer found, however, that (as Tugultschinow testified) Bethel threatened to fail Tugultschinow if he did not drive him to the New and Fulton Street area, so that Bethel could buy marijuana. Bethel also threatened to fail Tugultschinow if he would not have a car belonging to Bethel titled in his (Tugultschinow's) name.
6. After dropping off another student, Tugultschinow drove Bethel to downtown Dover. Bethel claims that he ran from Tugultschinow's car, leaving his book bag behind, because he saw a cab that he wanted to catch. Tugultschinow provided contrary testimony relating to how and why Bethel's book bag was left behind in Tugultschinow's car.[4]
7. The Hearing Officer found Tugultschinow to be a credible witness and rejected Bethel's account of the events, finding that Bethel's testimony contained inconsistencies and incredible statements.[5]
8. In November 2006, Dover High School principal Gene Montano ("Montano") conducted an investigation into allegedly improper grading practices by Bethel. A student, Justin Ames ("Ames"), told Montano that he gave Bethel $30 to change his final grade from a 39 to a 70. Another student, Teddy Harmon ("Harmon"), told Montano that a friend had paid Bethel $10 to change Harmon's grade from a 48 to a 69.[6] Principal Montano examined Bethel's grade book and learned that although Ames' final grade was clearly a 30, his report card showed a grade of 70. Montano testified that although a modification of a point or two might be appropriate, a 40-point change was definitely not.
9. The Hearing Officer found that: (1) Bethel's explanations for why he raised these students' grades and why these students would provide statements against him were not credible,[7] and (2) Bethel was insubordinate by contacting the students' parents after being instructed to take no reprisals against them. The Hearing Officer also found that Harmon's attempt to recant his prior written statement at the hearing was "extremely unconvincing."[8]
10. The Hearing Officer found, based on the testimony of Assistant principal, Lynn Widdowson ("Widdowson"), that in the Fall of 2006 Bethel yelled an inappropriate profanity in the presence of students at a Dover High School football game.[9]
11. At the hearing, Bethel argued that the Board erroneously relied on the incidents that occurred in the fall of 2006 (i.e., the sleeping, grading, and profane language) as grounds for termination, because those events were "stale."[10] After supplemental briefing by the parties, the Hearing Officer concluded that those incidents could be considered if they were given the appropriate weight. The Hearing Officer reasoned also that all these events occurred during the same school year and nothing in the statutory scheme regarding terminating teachers limited the time frame of the events that the Board may consider.[11]
12. Ultimately, the Hearing Officer concluded that Bethel had committed acts constituting immorality and misconduct in office: (1) by coercing one of his students to transport him to a known open-air drug market so that Bethel could purchase illegal drugs, thereby exposing Tugultschinow to danger; (2) by accepting money in return for raising grades, thereby giving students inaccurate grades not reflecting their work, and insubordinately contacting the parents of the complaining students; and (3) by willfully and knowingly using vulgar or profane language at a school event. Based on these conclusions the Hearing Officer recommended Bethel's termination.
13. On July 30, 2008, the Board adopted the Hearing Officer's report and voted to terminate Bethel's employment. Bethel appealed to the Superior Court, which held that: (1) the Board's adoption of the Hearing Officer's report was not erroneous, and (2) the Board's decision to terminate Bethel was supported by substantial evidence. The Superior Court affirmed, and this appeal followed.
14. On appeal, Bethel first claims that the Board violated his due process rights by depriving him of a fair and meaningful review process. Second, Bethel claims that the Board relied on insufficient evidence in finding him culpable of immorality and misconduct in office. Our standard of review "mirrors that of the Superior Court."[12] Where substantial evidence exists to support the Board's finding and there are no errors at law, this Court will affirm.[13] Issues of statutory construction are reviewed de novo.[14]
15. Bethel argues that he was denied due process because the Board did not provide a fair procedure and meaningful review. Specifically, Bethel claims that Board erred in adopting the Hearing Officer's report, because that report relied on earlier incidents (improper grading and use of inappropriate language) that should have been disregarded as irrelevant and stale. Bethel relies on the Superior Court's observation in Geshner v. Del. Real Estate Comm'n[15] that a "massive infusion" of irrelevant evidence in administrative proceedings is a denial of due process. Bethel also argues that the Board impermissibly relied on hearsay evidence as the sole basis for its decision to terminate him.
16. Chapter 14 of Title 14 of the Delaware Code sets forth the procedures for the termination of teachers. The statute specifically provides that at a termination hearing, "[a]ny evidence shall be admissible during the hearing which is adjudged by the board to be pertinent to the reasons contained in the written notice which the teacher received and which stated the reasons for dismissal."[16] As this Court has recognized, in such hearings, administrative boards are not constrained by the rigid evidentiary rules that govern jury trials.[17] Rather, the agency may hear "all evidence which could conceivably throw light on the controversy."[18]
17. Bethel's reliance on Geshner is inapposite.[19] The notice in Geshner stated that the basis for the hearing was 24 Del. C.§ 2912(a), a statute prohibiting false or fraudulent representation of a conviction in obtaining a real estate certificate.[20] The court held that the consideration of any matter unrelated to that one narrow issue (i.e., Geshner's failure to disclose his prior conviction), violated his due process rights.[21] In this case, however, Bethel's notice specifically stated that the basis for the hearing was immorality and misconduct in office, and all the incidents considered by the Hearing Officer and the Board were pertinent to the grounds provided in Bethel's notice.
18. Neither 14 Del. C. § 1413 (which provides for a hearing by a terminating board) nor 14 Del. C. § 1420 (which articulates the grounds for terminating a teacher), explicitly limit the time frame of incidents that may be considered in a termination hearing. Therefore, the Board was entitled to consider evidence about Bethel's performance of his duties throughout the entire period of his employment with the District.[22] Although cases may arise where the board relies on evidence too remote in time to be relevant to the proceeding, that did not occur in this case. Here, all the incidents considered by the Board took place during the same school year, which was only one year before the hearing.[23]
19. Finally, the Board did not impermissibly rely on hearsay evidence in reaching its decision to terminate Bethel. Because the Board is not bound by the formal rules of evidence, it may admit and consider hearsay evidence,[24] provided that such evidence is not the sole basis of the Board's decision.[25] Here, although the Board admitted hearsay evidence relating to the allegation of improper grading practices,[26] the Board's decision to terminate Bethel was grounded on all three incidents, not solely on the allegation of improper grading. Moreover, Montano's inspection of Bethel's grade book confirmed that the grade recorded therein did not match the grade on Ames' report card. Montano's testimony was not hearsay.
20. In administrative proceedings, "rudimentary requirements of fair play satisfy the due process requirements."[27] The record shows that the procedures employed at Bethel's termination hearing did not fall below the minimum standards for a fair administrative hearing. Bethel received adequate notice of the charges against him, had the opportunity to be heard in a meaningful time and manner and to present witnesses on his own behalf, and was afforded the opportunity to cross-examine the witnesses called by the District. The Board did not deny Bethel his due process rights.
21. Bethel next claims that the Board's decision is not supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Questions of conflict in testimony and witness credibility are to be resolved by the administrative agency, not the reviewing court.[29] Absent legal error, this Court cannot substitute its judgment for that of the Board.[30]
22. Here, substantial evidence, as earlier described, supports the Hearing Officer's factual findings that: (1) Bethel coerced one his students to transport him to a known drug market after midnight so that Bethel could purchase illegal drugs; (2) Bethel accepted money in exchange for raising certain students' grades, gave students grades not accurately reflecting their performance, and was insubordinate by contacting the students' parents; and (3) Bethel willfully and knowingly used inappropriate language at a school event. Those incidents justify the Board's decision to terminate Bethel on the basis of immorality and misconduct in office.[31]
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] See 14 Del. C. § 1420 ("Termination of any teacher's services during the school year shall be for 1 or more of the following reasons: Immorality, misconduct in office, incompetency, disloyalty, neglect of duty or willful and persistent insubordination.").
[2] The right to a hearing is granted pursuant to 14 Del. C. § 1413. At the hearing, both Bethel and the District were represented by counsel, and exercised their right to examine and cross-examine witnesses.
[3] At the time, Bethel's driving privileges were suspended due to a DUI conviction.
[4] Tugultschinow testified that Bethel asked him to park his car and turn off his lights. While Tugultschinow was waiting, a prostitute tried to talk to him. As Bethel was coming back with another individual, the prostitute jumped into Tugultschinow's car, claiming they were going to assault her. Frightened, Tugultschinow took off, and was eventually stopped by Wesley College security for erratic driving. Officer Webster of Dover Police responded to the scene, and searched Bethel's book bag. Tugultschinow was neither charged nor arrested for these events.
[5] The inconsistencies include: (a) Bethel did not call a cab from the Sunoco station although he had cash on him; (b) Bethel claims that he left his book bag in Tugultschinow's car because he was running for a cab, yet Officer Webster testified he saw Bethel "walking"not runningin the area of New and Fulton Streets; and (c) Bethel claims that he could not obtain a record of the cab ride because the driver embezzled both the fare and the tip.
[6] Ames' and Harmon's written statements were admitted into evidence at the hearing.
[7] Bethel claims that: (1) there was a District policy that no student could receive a final grade below a 60, and (2) the textbook was above the student's grade level and that their IEP's were incomplete. But Bethel did not provide evidence to verify either claim. In addition, Bethel claims these two students were motivated to lie because he caught them cheating on a test and gave them both zeroes. But Bethel also admitted the students were retested, thus presumably erasing the zeroes.
[8] The Hearing Officer found that Harmon indicated uncertainty about the events, and was frequently unintelligible. Moreover, Harmon offered no explanation for the change in his statement other than that his friend said the payment did not occur, which itself was quite possibly false.
[9] Bethel yelled "look at the fking score." Widdowson mistakenly believed that the incident occurred at a Dover-Smyrna Game, but Dover High School did not play against Smyrna that season. Regardless, the Hearing Officer did not discount Widdowson's testimony, because she was certain that Bethel made an inappropriate comment at a football game in the Fall of 2006.
[10] Bethel contends that the incidents occurred far in the past, and were not charged at the time they allegedly occurred.
[11] In particular, the Hearing Officer looked at the wording of 14 Del. C. § 1420 which states the grounds for terminating a teacher during the school year. It is silent as to a time frame that may be considered.
[12] Stoltz Mgmt. Co., Inc. v. Consumer Affairs Bd., 616 A.2d 1205, 1208 (Del. 1992).
[13] Id. See also 14 Del. C. § 1414.
[14] E.g., the Hearing Officer's determination that nothing in 14 Del. C. § 1420 limits the time frame of the events that might be considered by the Board.
[15] 1994 WL 680090 at *6 (Del. Super. Ct. Oct. 12, 1994).
[16] 14 Del. C. § 1413(a)(6).
[17] Tenaglia-Evans v. St. Francis Hosp., 913 A.2d 570 (Table), 2006 WL 3590385 at *3 (Del. Dec. 11, 2006); see also Baker v. Hosp. Billing & Collection Serv. Ltd., 2003 WL 21538020 at *3 (Del. Super. Ct. Apr. 30, 2003).
[18] Tenaglia-Evans, 2006 WL 3590385 at *3 (quoting Ridings v. Unemployment Ins. Appeal Bd., 407 A.2d 238, 240 (Del. Super. Ct. 1979)).
[19] See Geshner, 1994 WL 680090, at *6.
[20] Id. at *1-2.
[21] Id. at *6. The board had considered such evidence as a citizen's complaints against Geshner regarding fraud, civil judgment against him, prior arrests that did not lead to convictions, and suspicious conduct at work. Id. at *2-3.
[22] See Mack v. Kent County Vocational-Technical Sch. Dist., 1987 Del. Super. LEXIS 1151 (May 20, 1987) ("[T]he Board was entitled to consider testimony on the teacher's performance of duties throughout the total period of her employment with the District."); see also Leach v. Bd. of Educ. of the New Castle County Vocational-Technical Sch. Dist., 295 A.2d 582, 584 (Del. Super. Ct. 1972) (stating that the Board had a right to consider the teacher's conduct throughout the period of his school employment).
[23] The Hearing Officer explicitly recognized this principle in reaching his conclusions and weighed the incidents accordingly.
[24] Torres v. Allen Family Foods, 672 A.2d 26, 31 (Del. 1995).
[25] Shepherd v. Bd. of Educ. of Red Clay Consol. Sch. Dist., 2009 WL 3327224, at *3 (Del. Super. Ct. Oct. 14, 2009) (stating that generally hearsay should not provide the sole basis for a board's decision).
[26] Written statements of Bethel's students.
[27] XComp, Inc. v. Ropp, 2002 WL 1753168, at *2 (Del. Ch. July 19, 2002) quoting Sandefeur v. Unemployment Ins. Appeals Bd., 1993 WL 389217, at *5 (Del. Super. Ct. Aug. 27, 1993). See also Vincent v. E. Shore Markets, 970 A.2d 160, 163-64 (Del. 2009) (Fundamental fairness includes "fair notice of the scope of the proceedings and adherence of the agency to the stated scope of the proceedings.")
[28] Board of Educ., Laurel Special Sch. Dist. v. Shockley, 155 A.2d 323, 327 (Del. 1959).
[29] Geshner 1994 WL 680090 at *5. See also Lawrence v. Bd. of Educ. of the Appoquinimink Sch. Dist. 1994 WL 215221 at *5 (Del. Super. Ct. May 31, 1994) ("It is well settled that the Board is to make determinations regarding the credibility of witnesses, the weight to be accorded to their testimony and the reasonable inferences to be drawn therefrom.").
[30] Shockley 155 A.2d at 328.
[31] Delaware courts have construed "immorality," in the context of Title 14, to mean "such immorality as may reasonably be found to impair the teacher's effectiveness by reason of his unfitness or otherwise." Skripchuk v. Austin, 379 A.2d 1142,1143 (Del. 1977); Lawrence, 1994 WL 315221 at *5. Misconduct has been defined as a "transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior, willful in character, improper or wrong behavior." Rousak v. Bd. of Educ. of the Cape Henlopen Sch. Dist., 1987 Del. Super. LEXIS 1392, at *8 (Dec. 23, 1987) quoting Black's Law Dictionary 1150 (4th ed. 1968). The term "misconduct in office" means "[a]ny unlawful behavior by a public officer in relation to the duties of his office, willful in character." Id. It is sufficient that the "conduct was consistently contrary to the standard of behavior expected of a teacher." Ballard v. Bd. of Educ. of Christina Sch. Dist. 1985 WL 188988 at *3 (Del. Super. Ct. Mar. 27, 1985).